**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

NATALIE KUHR, on behalf of herself
and all others similarly situated,

                    Plaintiff,

v.                                                 Case No.  3:19-cv-453-J-34MCR

MAYO CLINIC JACKSONVILLE
and PROFESSIONAL SERVICE
BUREAU, INC.,

                    Defendants.

_____

# O R D E R

      **THIS CAUSE** is before the Court on the Plaintiff's Renewed Unopposed Motion for Preliminary Approval of Class Action Settlement, Certification of the Settlement Class, Approval of Class Notice, Scheduling of Final Approval Hearing, and Incorporated Memorandum of Law (Doc. 41; Renewed Motion), filed on September 8, 2020.[1]  Plaintiff attaches to the Renewed Motion a Revised Class Action Settlement Agreement and Release Pursuant to Federal Rule 23 (Doc. 41-1; Revised Agreement), which contains two exhibits: Exhibit A, which is a proposed order granting the instant Motion (Doc. 41-2; Proposed Order) and Exhibit B, which is a revised proposed class notice (Doc. 41-3;

---

[1] As discussed below, the Court held a hearing on August 6, 2020, to address its concerns with the initial Unopposed Motion for Preliminary Approval of Class Action Settlement, Certification of the Settlement Class, Approval of Class Notice, Scheduling of Final Approval Hearing, and Incorporated Memorandum of Law (Doc. 35; Initial Motion).  See Minute Entry (Doc. 40; Hearing).  At the Hearing, the Court denied the Initial Motion without prejudice, and directed Plaintiff to file a renewed motion which addressed the Court's concerns.  Id.

Revised Proposed Notice).[2]  In the Renewed Motion, Plaintiff states that the parties have reached a proposed class-wide settlement of the claims raised in this putative class action.  As such, pursuant to Rule 23, Federal Rules of Civil Procedure (Rule(s)), Plaintiff requests that the Court do the following: (1) conditionally certify a class action for settlement purposes only, (2) preliminarily approve the proposed settlement, (3) appoint Plaintiff as Class Representative and Plaintiff's counsel as Class Counsel for settlement purposes, (4) establish a schedule to complete the tasks necessary to effectuate the proposed settlement, and (4) provide that, if the settlement is not finally approved or terminates for any other reason, the parties shall retain, without prejudice, all objections, arguments, and defenses with respect to class certification.  See Renewed Motion at 1. Plaintiff represents that Defendants agree to the requested relief for settlement purposes. Id. at 2.  The Court has reviewed the Renewed Motion, its attachments, and the record in this case.

## I.      Procedural History

Plaintiff Natalie Kuhr initiated this action in state court on January 9, 2019, against Defendants Mayo Clinic Jacksonville (Mayo) and Professional Service Bureau, Inc. (PSB).  See Class Action Complaint (Doc. 3; Complaint).  PSB removed this action to this Court, with Mayo's consent, on April 22, 2019.  See Notice of Removal (Doc. 1; Notice). In the Complaint, Plaintiff asserts claims against Mayo and PSB under both the Florida Consumer Collection Practices Act (FCCPA), Fla. Stat. § 559.72, and the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692.  See Complaint, Cts. I-IV.  Plaintiff

---

[2] Plaintiff filed an executed version of the Revised Settlement Agreement on September 14, 2020. See Notice of Filing Revised Class Action Settlement Agreement and Release (Doc. 44).  Although Plaintiff represents that this version of the Revised Agreement is "fully executed," id. it does not appear to be signed by Class Counsel as is required by ¶ 6.14 of the Revised Agreement.

alleges that Mayo billed, and PSB attempted to collect, medical fees in excess of the amounts permitted under Florida law from certain Florida residents whose medical care was covered by personal injury protection (PIP) insurance.  See generally Complaint.

Pursuant to section 627.736(5)(a) of the Florida Statutes, medical providers who render treatment "to an injured person for a bodily injury covered by [PIP] insurance may charge the insurer and injured party only a reasonable amount pursuant to this section for the services and supplies rendered . . . ."  See Fla. Stat. § 627.736(5)(a).  The statute includes a schedule of the amounts a medical provider may charge (the Maximum Charge) and provides that the insurer "may limit reimbursement to 80 percent" of the Maximum Charge.  See id. § 627.736(5)(a)(1.).  In addition, the statute states that "[i]f an insurer limits payment as authorized by subparagraph 1., [the medical provider] may not bill or attempt to collect from the insured any amount in excess of such limits, except for amounts that are not covered by the insured's [PIP] coverage due to the coinsurance amount or maximum policy limits."  See id. § 627.736(5)(a)(4.).

Kuhr contends that Mayo violated these provisions by attempting to collect from patients amounts in excess of those permitted under this statute, a practice known as "balance billing."  See Complaint ¶¶ 27-36.  According to Kuhr, when Mayo's attempts to collect this "illegitimate debt" failed, Mayo referred the matter to PSB.  Kuhr alleges that her insurer informed PSB that the insurer had paid the amount legitimately owed, but PSB nevertheless continued to send Kuhr correspondence attempting to collect the excess debt. Id. ¶¶ 37-39. Kuhr contends that by attempting to collect a debt that Mayo and PSB knew was not legitimately owed, Mayo and PSB violated the FCCPA and FDCPA.  See id. ¶¶ 55-66.  Both Mayo and PSB filed answers denying these allegations.  See

Defendant Mayo Clinic Jacksonville's Answer and Affirmative Defenses to Plaintiff's Class Action Complaint (Doc. 4; Mayo Answer), filed April 22, 2019; Defendant Professional Service Bureau, Inc.'s Answer and Affirmative Defenses to Plaintiff's Class Action Complaint (Doc. 8; PSB Answer), filed April 29, 2019.

As alleged in the Complaint, Plaintiff sought to bring the claims in this case as a class action on behalf of herself and a class of "similarly situated" individuals. See Complaint ¶¶ 46-54. In light of this, Local Rule 4.04(b) required Plaintiff to "move for a determination under Rule 23(c)(1) as to whether the case is to be maintained as a class action," within ninety days "following the filing of the initial complaint in such an action, unless the time is extended by the Court for cause shown . . . ." See Local Rule 4.04(b), United States District Court, Middle District of Florida.  However, Plaintiff failed to file a motion for class certification by the deadline.  As a result, Defendants objected to engaging in class-wide discovery, apparently alerting Plaintiff to the missed deadline and prompting her to file a motion for extension of time to file a motion for class certification. See Plaintiff's Motion for Clarification Regarding the Class Certification Deadline, or in the Alternative, Motion for Extension of Time to File Motions for Class Certification (Doc. 24), filed December 6, 2019.  The Court exercised its discretion to grant the motion in an Order (Doc. 26) entered January 14, 2020.  According to Kuhr, the parties then engaged in discovery, including review of "hundreds of pages of documentation," and after "months of back and forth negotiations," reached the proposed class-wide settlement.  See Renewed Motion at 4.  Notably, the parties filed a Joint Notice of Proposed Class Settlement just over two months after the Court's Order extending the class certification deadline. See Joint Notice of Proposed Class Settlement (Doc. 28), filed March 18, 2020.

-4-

On June 3, 2020, Plaintiff filed an Unopposed Motion for Preliminary Approval of Class Action Settlement, Certification of the Settlement Class, Approval of Class Notice, Scheduling of Final Approval Hearing, and Incorporated Memorandum of Law (Doc. 35; Initial Motion) seeking preliminary approval of the settlement as well as approval of the proposed class notice.  See generally Initial Motion, Ex. 1: Class Action Settlement Agreement and Release (Doc. 35-1; Settlement Agreement); see also Settlement Agreement, Ex. B: Proposed Notice.  Upon review of the Initial Motion and attachments, the Court had several concerns regarding the proposed class definition, the terms of the Settlement Agreement, and the Proposed Notice.  See Order (Doc. 36), entered July 17, 2020. As such, the Court set the matter for a hearing, id., at which all parties appeared via Zoom on August 6, 2020.  See Minute Entry (Doc. 40; Hearing).  In accordance with the matters discussed at the Hearing, Plaintiff filed the Renewed Motion on September 8, 2020, with the Revised Agreement and Revised Proposed Notice.[3]

## II.    Terms of Settlement Agreement

Pursuant to the Revised Agreement, the parties agree, for settlement purposes only, to the certification of a defined settlement class (Settlement Class).  See Settlement Agreement.   The parties define the Settlement Class, which includes 371 potential members (Class Members), as a combination of the "Mayo Class" and the "FDCPA Subclass."  See Revised Agreement ¶¶ 1.12, 1.18, 1.32; see also Renewed Motion at 6; Proposed Order at 1-2.  According to the Revised Agreement, the Mayo Class constitutes:

---

[3] Simultaneously with the Renewed Motion, Plaintiff also filed Plaintiff's Unopposed Motion for Award of Attorneys' Fees and Costs and for Named Plaintiff's Service Award (Doc. 42; Fees Motion).  The Court will defer ruling on the Fees Motion until such time as the Class Members have received notice and an opportunity to object.  See Johnson v. NPAS Solutions, LLC, --- F.3d ---, 2020 WL 5553312, at *4-5 (11th Cir. Sept. 17, 2020).

> [A]ll Florida residents who according to readily accessible data and other electronic records of Mayo, at any time during the period of January 9, 2017 through May 28, 2020, were charged by Defendant Mayo medical-related fees related to motor vehicle accidents in excess of the amount allowed under Florida law.

See id. ¶ 1.18.  The FDCPA Subclass is defined to mean

> [A]ll Florida Residents who according to readily accessible data and other electronic records of Mayo and PSB, at any time during the period of January 9, 2018 through May 28, 2020, were charged by Defendant PSB acting on Mayo's behalf medical-related fees related to motor vehicle accidents in excess of the amount allowed under Florida law.

Id. ¶ 1.12.  The Court will use the term "Settlement Class" to refer to these two groups collectively.  Although not specified in the Revised Agreement, the parties also agree that the following individuals are excluded from the Settlement Class:

> 1) any Judge or Magistrate presiding over this action and members of their families; 2) Defendants, Defendants' subsidiaries, parents, successors, predecessors,  and any entity in which Defendants or their parents have a controlling interest and its current or former employees, officers and directors; 3) persons who properly execute and file a timely request for exclusion from the Classes; 4) the legal representatives, successors, or assigns of any such excluded persons; 5) Plaintiff's counsel and Defendants' counsel.

See Renewed Motion at 6; Proposed Order at 2.  Pursuant to the Revised Agreement, Class Members have already received "a full refund or waiver of all amounts charged in excess of the amount permitted" under § 627.736(5)(a)(4) of the Florida Statutes.  See Renewed Motion at 5; Revised Agreement ¶¶ 3.01(a), 3.14.  The refunded or waived excess medical fees total $515,502.20 in actual damages to Class Members (the Actual Damage Settlement Consideration).  See Renewed Motion at 5; Revised Agreement ¶¶ 1.01, 3.01(a), 3.14.  In addition, Defendants have agreed to pay $500,000 in statutory damages (the Statutory Damage Fund) which, after certain deductions, will be divided equally among the Settlement Class.  See Renewed Motion at 5; Revised Agreement ¶¶

-6-

1.31, 3.01(a).  Thus, the actual and statutory damages together equal a Total Settlement Amount of $1,015,502.20.  <u>See</u> Renewed Motion at 5; Revised Agreement ¶ 1.35.  In addition, Mayo agreed to pay the costs of settlement administration up to $50,000.  <u>See</u> Settlement Agreement ¶¶ 1.30, 2.15.  In the Renewed Motion, Kuhr estimates that administration costs will be approximately $34,000.  <u>See</u> Renewed Motion at 7.  The Settlement Agreement also reflects that each Defendant has agreed to change its procedures and will "no longer charge amounts in excess of the amount permitted under § 627.736(5)(a)(4), Fla. Stat. in the future."  <u>See</u> Revised Agreement ¶ 3.15.

In addition, the Revised Agreement provides that, subject to Court approval, attorneys' fees and costs, as well as an incentive award to the Class Representative, will be paid from the Statutory Damage Fund, with the remainder distributed to Class Members on a pro rata basis.  <u>See</u> Revised Agreement ¶¶ 2.20, 2.22, 3.01.  With respect to attorneys' fees and costs, the parties agreed that Class Counsel may seek Court approval of an award no greater than 27.5% of the Total Settlement Amount, approximately $279,263.11.  <u>Id.</u> ¶ 2.20(a).  As to the incentive award, the parties agreed that Natalie Kuhr, as Class Representative, could seek an incentive award not to exceed $5,000.  <u>Id.</u> ¶ 2.22.  According to the Revised Agreement, both the attorneys' fee award and the incentive award, if approved by the Court, would be paid from the Statutory Damage Fund.  <u>Id.</u> ¶¶ 2.20, 2.22, 3.01.

Pursuant to the Revised Agreement, Class Members who do not opt out will receive a benefit check with their pro rata share of the Statutory Damage Fund.  <u>Id.</u> ¶ 3.05(a).  If the Court does not substantially reduce the amount of attorneys' fees below what is authorized under the Revised Agreement, then each Class Member's pro rata

-7-

share from the Statutory Damage Fund will be approximately $600.[4]   <u>See</u> Renewed

Motion at 7.  Class Members will not need to submit a claim form or take any affirmative

steps in order to receive the funds.  However, any benefit checks not negotiated within

180 days of their issue will be void.  <u>See</u> Revised Agreement ¶ 3.05(b).  The parties have

agreed that any residual sums from uncashed checks will be paid to a <u>cy pres</u> recipient,

designated in the Settlement Agreement as Jacksonville Area Legal Aid (JALA).  <u>See</u> <u>id.</u>

¶ 3.05(b); <u>see</u> <u>also</u> Renewed Motion at 7-8.  In exchange for these benefits, the Revised

Agreement provides that Class Members will release all past, present and future claims

against Defendants that "arise out of and/or concern" the claims "that were asserted, or

attempted to be asserted, or that could have been asserted" in this lawsuit.  <u>See</u> Revised

Agreement ¶ 4.01.

## III.   Motion to Certify Class

In the Renewed Motion, the parties request that the Court conditionally certify the

Settlement Class for purposes of considering the proposed settlement.  <u>See</u> Renewed

Motion at 1, 15-21.  Before certifying a class, even where a settlement is involved, a

district court must analyze the requirements of Rule 23, Federal Rules of Civil Procedure

(Rule(s)).  <u>Amchem Prods., Inc. v. Windsor</u>, 521 U.S. 591, 619-20 (1997).  Indeed,

although Defendants do not contest class certification, the Court must still find that the

class certification requirements are satisfied.  <u>See</u> <u>Valley Drug Co. v. Geneva Pharm.</u>,

---

[4] More precisely, if the Court approves the full $279,263.11 fee award that Class Counsel requests, and assuming the settlement administration costs do not exceed $50,000, Class Members' pro rata share of the Statutory Damage Fund will be $594.97.  This amount does not account for an incentive award to the Representative Plaintiff.  As explained below, recent binding Eleventh Circuit authority prohibits the payment of an incentive award to the Representative Plaintiff.  As such, the Court cannot approve this portion of the Revised Agreement and has recalculated each Class Member's approximate pro rata share of the Statutory Damage Fund without this deduction.

Inc., 350 F. 3d 1181, 1188 (11th Cir. 2003).  Pursuant to Rule 23, class certification is appropriate if:

> (1) the class is so numerous that joinder of all members would be impracticable; (2) there are questions of fact and law common to the class; (3) the claims or defenses of the representatives are typical of the claims and defenses of the unnamed members; and (4) the named representatives will be able to represent the interests of the class adequately and fairly.

See id. at 1187-88; Rule 23(a)(1)-(4).  A party seeking class certification must establish these four prerequisites to class certification, commonly referred to as the "numerosity, commonality, typicality, and adequacy of representation" requirements, as well as one of the alternative requirements set forth in Rule 23(b).  See Valley Drug, 350 F. 3d at 1188. "Failure to satisfy any one of these four factors and at least one of the alternative requirements of Rule 23(b) precludes class certification."  Id.   Moreover, a district court cannot substitute its finding that a settlement is fair for the satisfaction of the requisite criteria for class certification.  See Amchem Products, 521 U.S. at 622.

## A.  Numerosity

The proper focus for the numerosity requirement is whether the joinder of all class members would be impracticable in view of their number and all other relevant factors. See Phillips v. Joint Legis. Comm., 637 F. 2d 1014, 1022 (5th Cir. 1981).[5]  Some of the factors courts consider are "the size of the class, ease of identifying its numbers and determining their addresses, facility of making service on them if joined and their geographic dispersion."  Kilgo v. Bowman Transp., Inc., 789 F.2d 859, 878 (11th Cir. 1986).  Significantly, "there is no fixed numerosity rule, generally less than twenty-one is

---

[5] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

inadequate, more than forty adequate, with numbers between varying according to other factors." See Cox v. Am. Cast Iron Pipe Co., 784 F.2d 1546, 1553 (11th Cir. 1986) (internal quotation omitted) (citing 3B Moore's Federal Practice ¶ 23.05[1] n.7 (1978)).

Here, Kuhr asserts that there are 371 putative members of the Settlement Class. See Renewed Motion at 5, 18.  While there is no fixed class size that will satisfy the numerosity requirement, the Court has no hesitation in finding that joinder of the 371 Florida residents who, over the last three years, received medical bills from Defendants for amounts allegedly in excess of what is permitted under Florida would be impracticable. Thus, the Court concludes that the numerosity threshold is satisfied.

### B. Commonality

The second requirement, commonality, demands that there be questions of law or fact common to the Class.  See Rule 23(a)(2).  However, this does not mean that all of the questions of law or fact raised by the case must be common to all class members. See Ault v. Walt Disney World Co., 254 F.R.D. 680, 686 (M.D. Fla. 2009).[6]  Rather, "the existence of a single factual or legal question across the class as a whole may often suffice."  Id.  Here, Kuhr alleges that Mayo charged Kuhr and the Class Members medical fees in excess of the amounts permitted under Florida law.  Kuhr contends that Mayo and PSB's attempts to collect that allegedly illegitimate debt violated the FDCPA and FCCPA. Thus, the method Mayo utilized to determine how much to bill a patient whose medical

---

[6] The district court in Ault later vacated its class certification decision after determining that the plaintiffs lacked standing.  See Ault, No. 6:07-cv-1785-Orl-31KRS, 2009 WL 3242028, at *1, 8 (M.D. Fla. Oct. 6, 2009).  However, the Eleventh Circuit reversed the district court's decision on standing, see Ault, 405 F. App'x 401 (11th Cir. 2010), and when the matter was remanded to the district court, the court adhered to its prior rulings regarding class certification, see Ault, 2011 WL 1460181, at *1 (M.D. Fla. Apr. 4, 2011).  The Eleventh Circuit thereafter affirmed the district court's decision to certify the class and approve the class action settlement.  See Ault, 692 F.3d 1212, 1214 (11th Cir. 2012).

care is covered under PIP insurance, whether that method violated Florida law, and if so, whether Mayo knew its billing practices violated Florida law are questions of fact and law common to the Settlement Class.  In addition, whether Defendants' attempt to collect those purportedly excessive medical fees violated the FDCPA and FCCPA, and whether Class Members are entitled to statutory damages and/or attorneys' fees and costs are questions of law, which at least in part, would be common to all members of the class. As such, the Court finds the commonality requirement is satisfied.

### C. Typicality

Next, the Court must determine whether Kuhr's claims or defenses are typical of the claims or defenses of the Class.  The prerequisites of commonality and typicality both "focus on whether a sufficient nexus exists between the legal claims of the named class representatives and those of individual class members to warrant class certification." See Prado-Steiman v. Bush, 221 F.3d 1266, 1278 (11th Cir. 2000).  While commonality is concerned with group characteristics of a class as a whole, typicality "refers to individual characteristics of the named plaintiff in relation to the class."  See id. at 1279.  Typicality is satisfied "'if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory.'"  Ault v. Walt Disney World Co., 692 F.3d 1212, 1216 (11th Cir. 2012) (quoting Kornberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332, 1337 (11th Cir. 1984)).  Here, Kuhr has standing in her own right to raise the legal claims in the Complaint, as she claims to have been damaged by the allegedly improper practices of Defendants.  The damages and any claims of the Class Members would stem from the same practice of attempting to collect allegedly excessive medical fees.  Thus, the claims of the Class Members stem

from the same practice or course of conduct by Defendants that allegedly injured Kuhr. Moreover, all of the claims are based on the same legal theories.  Thus, the typicality requirement of Rule 23(a)(3) is satisfied.

> **D.   Adequacy of Representation**

The fourth prerequisite to class certification set forth in Rule 23(a) requires a demonstration that the representative parties "will fairly and adequately protect the interests of the class." Rule 23(a)(4).  The "adequacy of representation" analysis requires two separate inquiries: "'(1) whether any substantial conflicts of interest exist between the representative and the class; and (2) whether the representatives will adequately prosecute the action.'" See Valley Drug Co., 350 F.3d at 1189 (quoting In re HealthSouth Corp. Securities Litigation, 213 F.R.D. 447, 460-61 (N.D. Ala. 2003)).  The purpose of the "adequacy of representation" requirement is "to protect the legal rights of absent class members" who will be bound by the res judicata effect of a judgment. Kirkpatrick v. J.C. Bradford & Co., 827 F.2d 718, 726 (11th Cir. 1987).  As such, the requirement applies to both the named plaintiffs and to their counsel. London v. Wal-Mart Stores, Inc., 340 F.3d 1246, 1253 (11th Cir. 2003).

Defendants do not contest Kuhr's ability to diligently prosecute this action nor the qualification, experience or competence of Kuhr's counsel.  Based upon a review of the filings in this case, as well as the representations of Kuhr's counsel regarding his experience in similar cases, see Declaration of Jordan A. Shaw, Esq. (Doc. 43; Shaw Decl.), the Court is satisfied that Kuhr is acting through adequate counsel.  Additionally, Defendants have not suggested that Kuhr has any interest that conflicts with the interests of the Class.  The Court independently discerns none.  Indeed, Kuhr and her counsel

appear to have achieved a fair result for the Class Members in that Class Members will receive a full waiver or refund of their actual damages, as well as a statutory damage award.  Accordingly, the Court determines that Kuhr appears to fairly and adequately represent the interests of the Class.  Thus, the Court finds that the prerequisites set forth in Rule 23(a) are satisfied.

### E.     Rule 23(b)

Finally, "a class action may be maintained if Rule 23(a) is satisfied" and the action falls within one of three types of class actions recognized in Rule 23(b).  See Rule 23(b). In the Motion, Kuhr asserts that the Settlement Class can be maintained under Rule 23(b)(3).  See Renewed Motion at 20.  A Rule 23(b)(3) class action may be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Rule 23(b)(3).

### a.     Predominance

"Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief."  Williams v. Mohawk Indus., Inc., 568 F.3d 1350, 1357 (11th Cir. 2009). An inquiry into the predominance of common questions of law or fact "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  See Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623 (1997). "[I]n determining whether class or individual issues predominate in a putative class action suit, [the Court] must take into account the claims, defenses, relevant facts, and applicable

-13-

substantive law." <u>Klay v. Humana, Inc.</u>, 382 F.3d 1241, 1254 (11th Cir. 2004), <u>abrogated</u> <u>in part on other grounds by</u> <u>Bridge v. Phoenix Bond & Indem. Co.</u>, 553 U.S. 639 (2008)). Common issues predominate if those issues that are subject to generalized proof predominate over those that are subject to individualized proof. <u>Veal v. Crown Auto</u> <u>Dealerships, Inc.</u>, 236 F.R.D. 572, 579 (M.D. Fla. 2006). On the other hand, "common issues will not predominate over individual questions if, 'as a practical matter, the resolution of [an] overarching common issue breaks down into an unmanageable variety of legal and factual issues.'" <u>Bussey v. Macon Cnty. Greyhound Park, Inc.</u>, 562 F. App'x 782, 789 (11th Cir. 2014) (quoting <u>Andrews v. Am. Tel. & Tel. Co.</u>, 95 F.3d 1014, 1023 (11th Cir. 1996)).

As stated above, this case involves common issues of law and fact surrounding Mayo's billing practices as they pertain to patients whose medical treatment was covered under PIP insurance. Whether these practices resulted in "balance billing" in violation of Florida law is the predominant legal question in this case. Likewise, whether Defendants' efforts to collect those alleged improper amounts violated the FDCPA or FCCPA is a common issue that will predominate over any individual questions. Indeed, neither Kuhr nor Defendants have suggested that any individual factual questions arising from the claims of the Class Members would interfere with the resolution of the common issues. As such, the undersigned concludes that common issues predominate over any individual issues.

### b. Superiority

Turning to the superiority requirement of Rule 23(b)(3), the Court considers "the relative advantages of a class action suit over whatever other forms of litigation might be

realistically available to the plaintiffs." Klay, 382 F.3d at 1269. Rule 23(b)(3) contains a list of factors to consider when making a determination of superiority:

> (A) the class members' interest in individually controlling the prosecution or defense of separate actions;

> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

> (D) the likely difficulties in managing a class action.

Rule 23(b)(3).  The Court has considered the above factors and finds that each weighs in favor of preliminary certification of the Settlement Class and approval of the proposed settlement.

In the Renewed Motion, Kuhr asserts that class resolution is superior to individual cases because the damages involved are relatively low and Class Members "have little interest in prosecuting individual actions."  See Renewed Motion at 21.  In addition, Kuhr maintains that prosecuting 371 individual claims based on the same underlying conduct would be repetitive, wasteful and place an undue burden the court.  Id.  As such, Kuhr contends that "a class action is a superior method of adjudicating the controversy because class settlement provides an efficient and appropriate resolution of the controversy."  Id. at 22.

While the Court agrees with Kuhr's assessment that the class action mechanism is the superior method of adjudicating this action for purposes of efficiency, the Court questions Kuhr's contention that individual Class Members would have "little interest" in pursuing this case themselves.  The instant matter does not entail de minimis damages, as the individual Class Members, on average, incurred actual damages of over $1,300

from allegedly illegitimate medical bills.  Moreover, if a class member were to pursue individual relief, she could be entitled to up to $1,000 in additional statutory damages, as well as her costs and reasonable attorneys' fees.  Thus, the Court is not convinced that an individual Class Member in this case would have no incentive to bring a solo action prosecuting his or her own rights.  Nonetheless, the size of an individual Class Member's claim is likely still so small, or a Class Member may be so unfamiliar with the law, that she would not file suit individually, especially against large corporate defendants with the means to draw out legal proceedings.  See Klay, 382 F.3d at 1270.  Moreover, the size of the Class here is manageable and proceeding with this case as a class action will offer substantial economies of "'time, effort, and expense for the litigants . . . as well as for the [C]ourt.'"  Id. (quoting In re Terazosin Hydrochloride Antitrust Litig., 220 F.R.D. 672, 700 (S.D. Fla. 2004)); see also Upshaw v. Georgia (GA) Catalog Sales, Inc., 206 F.R.D. 694, 701 (M.D. Ga. 2002) ("[E]ven if sufficient incentive existed for individual claimants to pursue their claims separately, class action treatment is far superior to having the same claims litigated repeatedly, wasting valuable judicial resources.").  As such, the Court is satisfied that the superiority requirement is met.

## IV.   Settlement

### A. Preliminary Approval of Settlement Terms

Rule 23(e) provides that a court may approve a proposed class action settlement "only after a hearing and on finding that it is fair, reasonable, and adequate."  See Rule 23(e)(2).  Although the Court need not make a final determination of the fairness, reasonableness, and adequacy of the proposed settlement at this stage of the proceedings, the Court must make a preliminary finding that the proposed settlement is

sufficiently fair, reasonable, and adequate on its face to warrant presentation to the class members.  See William B. Rubenstein, Newberg on Class Actions § 11:25 (4th ed.) (citing The Manual for Complex Litigation § 30.41 (3d ed.)) ("If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies...the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.").  Thus, the Court has examined the terms of the proposed settlement in order to make a preliminary determination of whether it appears to be sufficiently fair, reasonable, and adequate to warrant granting the relief requested in the Renewed Motion.  The Court acknowledges that the parties represent that they agreed to the settlement through "serious, informed, arm's length, and non-collusive negotiations" between counsel.  See Renewed Motion at 11.  In addition, the Court notes that the parties reached the settlement after engaging in discovery.  With two exceptions, the terms of the Revised Agreement appear to be sufficiently fair, reasonable, and adequate to warrant presentation to the Settlement Class.

First, on September 17, 2020, the Eleventh Circuit Court of Appeals issued a published decision in which it held that Supreme Court precedent from the late 1800's prohibits incentive awards to representative plaintiffs in class action settlements such as this.  See Johnson v. NPAS Solutions, LLC, --- F.3d ----, 2020 WL 5553312, at *10, *12 (11th Cir. Sept. 17, 2020) (reversing the district court's approval of an incentive award to the class representative).  In light of this binding precedent, the Court must reject any incentive award to Kuhr.  Notably, the Revised Agreement expressly states that Kuhr's

agreement to the settlement was not conditioned on the possibility of receiving an incentive award.  See Revised Agreement ¶ 2.24  Moreover, the parties agreed that even if the Court wholly denied any incentive award, as the Court must do here in light of Eleventh Circuit precedent, "the remainder of the terms of this Agreement shall remain in effect and such denial . . . shall not provide any basis for Class Counsel or Representative Plaintiff to seek to terminate or void this Agreement."  Id. ¶ 2.25.  As such, the Court will deny the Renewed Motion to the extent Plaintiff seeks preliminary approval of any incentive award to the Class Representative and has removed this language from the Court's Class Notice, discussed below.

Second, while the Court has determined that that the settlement is otherwise sufficiently fair and reasonable to warrant presentation to the Class, this finding in no way reflects on whether the amount of fees requested is reasonable.  Because the parties have agreed that the Revised Settlement is effective regardless of the amount of attorneys' fees and costs awarded, see Revised Agreement ¶ 2.25, the Court need not determine at this time the reasonableness of any attorneys' fees award.  However, it bears noting that while Class Counsel repeatedly touts their achievement in obtaining the "maximum amount of statutory damages" permitted under the relevant statutes, see Renewed Motion at 7, 11; Fee Motion at 2-3, they also made a substantial concession in agreeing to forego an additional recovery of attorneys' fees and costs from Defendants, as authorized under the statute had they prevailed at trial.  See 15 U.S.C. § 1692k(a)(3).[7]

---

[7] Nor does it appear accurate to state that Class Counsel obtained the "maximum amount of statutory damages" available in this lawsuit.  Class Counsel argues that $500,000 is the maximum recovery because the Class could not have recovered statutory damages from each Defendant separately, see Renewed Motion at 12, but does not address whether the Class could have pursued the maximum amount of statutory damages under both the FDCPA and the FCCPA, for a total statutory damage award of $1 million.  See Ocwen Loan Servicing, LLC v. Belcher, No. 18-90011, 2018 WL 3198552, at *5 (11th Cir. June

Rather than leverage the statutory fee-shifting provision to require Defendants to pay the attorneys' fees and costs in addition to actual and statutory damages as part of the settlement, Class Counsel agreed to a common fund approach in which it is, in essence, the Class Members who are paying their attorneys' fees and costs. See In re Home Depot Inc., 931 F.3d 1065, 1079 (11th Cir. 2019) ("Common-fund cases are consistent with the American Rule, because the attorney's fees come from the fund, which belongs to the class. In this way, the client, not the losing party, pays the attorney's fees."). Certainly, the existence of a fee-shifting provision in the statute did not obligate Defendants, who do not concede liability, to agree to pay fees as part of the settlement, but this is nevertheless a substantial concession on Class Counsel's part, in what otherwise appears to be a straightforward case of liability. The concession is all the more concerning given that, based on their statements at the August 6, 2020 Hearing, Class Counsel appears not to appreciate the concession they made and, despite the Court's stated concerns at the Hearing, it remains unaddressed in the Renewed Motion or the Fee Motion.[8] Indeed, Class Counsel continues to maintain that the settlement is "the maximum amount that Plaintiff could recover even if the case proceeded to trial, and Plaintiff was successful on all of her claims." See Renewed Motion at 13. But Class Counsel offers no explanation as to why Plaintiff would be unable to recover her attorneys'

---

29, 2018) ("In this case, each statute [the FDCPA and the FCCPA] under which [the plaintiff] has sued caps total class-wide damages at $500,000, limiting [defendant's] exposure to $1 million (plus any awards of costs, fees, etc.)."). While the Court finds that a settlement with $500,000 in statutory damages is reasonable under the circumstances of this case, the Court cautions Class Counsel that he must take greater care in ensuring that his representations to the Court are accurate.

[8] It also bears noting that by utilizing a common fund approach to attorneys' fees in this case, Class Counsel was able to pursue a far greater award than they could have reasonably supported under the lodestar approach that applies to fees awarded pursuant to fee-shifting agreements. See In re Home Depot Inc., 931 F.3d at 1085-86.

fees and costs, in addition to actual and statutory damages, were she to prevail at trial as provided by both the FDCPA and FCCPA.  See 15 U.S.C. § 1692k(a)(3); see also Fla. Stat. § 559.77(2).  Thus, as the Court explained to Class Counsel at the August 6, 2020 Hearing, the Court will carefully weigh this concession when it takes up consideration of the Fee Motion.

### B. Class Notice

Rule 23(e) requires a court to "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement.  See Rule 23(e)(1). With regard to Rule 23(b)(3) classes, the Rule states that

> the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means.  The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Rule 23(c)(2)(B).  Thus, the Rule requires that "[i]ndividual notice must be sent to all class members whose names and addresses may be ascertained through reasonable effort." Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 173 (1974).  Additionally, due process requires that the "notice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"  See id. at 174 (quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)).  "In every case, reasonableness is a function of anticipated results, costs, and amount involved."  In re Nissan Motor Corp. Antitrust Litig.,

-20-

552 F.2d 1088, 1099 (5th Cir. 1977). Reasonableness also depends on the information available to the parties. See id. at 1098.

As stated above, upon review of the initial Settlement Agreement and Proposed Class Notice, the Court identified certain deficiencies in these documents that required clarification and correction. On August 6, 2020, the Court conducted a Hearing with the parties to address the Court's concerns. At the Hearing, the Court directed the parties to file revised documents, which they did on September 8, 2020. After reviewing the Revised Proposed Notice, the Court found it necessary to re-work the notice to promote clarity and provide the Class Members with sufficient information regarding their rights and the proposed settlement. As such, the Court has prepared the Court's Class Notice and attached it to this Order. The Court's Class Notice informs the Settlement Class Members of the nature of the action, see Court's Class Notice at 1; the definition of the class, id. at 1-2; the claims, issues, and defenses, id. at 3-4; that Class Members may obtain their own counsel in the matter, id. at 6-7; the choice Class Members have to be excluded from the class, id. at 2, 4-5; the time and manner for requesting exclusion from the class, id. at 4-5; the entity that will administer the claims and the settlement (Settlement Administrator), id. at 4, 5, 7; and the binding effect of the settlement on Settlement Class Members who do not opt-out, id. at 2, 4, 5. Thus, the Court's Class Notice includes the information required by Rule 23(c)(2)(B). In addition, the Notice informs Settlement Class Members of their ability to object to the proposed settlement and explains the procedures for doing so. See id. at 2, 5-6; see also Rule 23(e)(5).

To finalize the Court's Class Notice, additional information is needed regarding the Settlement Administrator's contact information, the website for the Settlement, and the

username and password for the website.  See Court's Class Notice ¶¶ 4, 10.  Thus, the Court will direct the parties to insert the appropriate information to create the Final Class Notice.  The Court is satisfied that the Final Class Notice, which will incorporate the relevant contact information, satisfies the notice requirements of Rule 23.  The Court will approve the Final Class Notice and direct that it be distributed to the putative members of the Settlement Class as set forth in the Revised Agreement.

### C. CAFA Notice

Finally, the Court recognizes that the Class Action Fairness Act (CAFA), 28 U.S.C. § 1715 imposes additional notice requirements on defendants in class action lawsuits.  In the Settlement Agreement, the parties agreed that Defendants have provided the required notices under CAFA.  See Revised Agreement ¶ 2.17.  The Settlement Agreement further states that "Mayo and PSB have served the notices required under 28 U.S.C. § 1715 upon all appropriate state and/or federal officials at least ninety (90) days before the date that the Final Approval Order may be issued."  See Revised Agreement ¶ 2.26.  Although the parties do not inform the Court when the CAFA notices were served, given that the Revised Agreement was executed in early September, the Court is satisfied that the statutorily mandated ninety-day period will have passed by the time of the Fairness Hearing on January 20, 2021.  Regardless, the Court will confirm with the parties at the Fairness Hearing whether the ninety-day period has expired prior to entering any order finally approving the settlement, if the Court determines that final approval of the settlement is warranted.  See 28 U.S.C. § 1715(d) ("An order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates

on which the appropriate Federal official and the appropriate State official are served with the notice required under subsection (b).").

## V.    Conclusion

Upon consideration of the Renewed Motion, the Revised Proposed Notice, and the Revised Agreement, as well as all matters of record, the Court finds that there is good cause to preliminarily certify the Settlement Class, and approve the proposed settlement, subject to further consideration by the Court at a fairness hearing.  With the exceptions stated above, the Court concludes that the proposed Revised Agreement is sufficiently fair, reasonable, and adequate to warrant submitting the proposed settlement to the Settlement Class and setting a fairness hearing.  Thus, the Court determines that it is appropriate to grant the Motion to the extent set forth below.  Accordingly, it is

**ORDERED:**

1. Plaintiff's Renewed Unopposed Motion for Preliminary Approval of Class Action Settlement, Certification of the Settlement Class, Approval of Class Notice, Scheduling of Final Approval Hearing, and Incorporated Memorandum of Law (Doc. 41) is **GRANTED** to the extent set forth below, and otherwise **DENIED**.

2. The Court, having found that Plaintiff has met the prerequisites to class certification set forth in Rule 23, Federal Rules of Civil Procedure, conditionally certifies, for purposes of settlement only, the Settlement Class.  The Settlement Class is made up of the Mayo Class and the FDCPA Subclass, defined as follows:

-23-

A. The Mayo Class:

[A]ll Florida residents who according to readily accessible data and other electronic records of Mayo, at any time during the period of January 9, 2017 through May 28, 2020, were charged by Defendant Mayo medical-related fees related to motor vehicle accidents in excess of the amount allowed under Florida law.

B. The FDCPA Subclass:

[A]ll Florida Residents who according to readily accessible data and other electronic records of Mayo and PSB, at any time during the period of January 9, 2018 through May 28, 2020, were charged by Defendant PSB acting on Mayo's behalf medical-related fees related to motor vehicle accidents in excess of the amount allowed under Florida law.

3. The following individuals are **excluded** from the Settlement Class:

a) any Judge or Magistrate presiding over this action and members of their families; b) Defendants, Defendants' subsidiaries, parents, successors, predecessors,  and any entity in which Defendants or their parents have a controlling interest and its current or former employees, officers and directors; c) persons who properly execute and file a timely request for exclusion from the Classes; d) the legal representatives, successors, or assigns of any such excluded persons; e) Plaintiff's counsel and Defendants' counsel.

4. The Court designates Plaintiff Natalie Kuhr as Class Representative, with Plaintiff's Counsel Jordan A. Shaw, Edward H. Zebersky, and Kimberly A. Slaven of Zebersky, Payne, Shaw, Lewenz, LLP as Class Counsel.

5. Except as stated in paragraphs 8 and 9 below, the Court preliminarily approves the terms of the Revised Agreement as being a fair, reasonable, and adequate resolution of the dispute between the parties.

6. A final hearing (Fairness Hearing) will be held at **10:00 a.m. on Wednesday, January 20, 2021**, in Courtroom 10B at the United States Courthouse, 300 North

Hogan Street, Jacksonville, Florida 32202,[9] at which time the Court will consider whether the proposed settlement should be finally approved as fair, reasonable, and adequate, and whether a final judgment should be entered.  The Court may adjourn and/or continue the Fairness Hearing, or convert the hearing to a virtual Zoom hearing, without further notice to the Settlement Class Members.  Any member of the Settlement Class wishing to attend the Fairness Hearing must consult the Clerk of the Court, the Court's docket, or the Settlement Administrator's website to confirm the time and manner of the Hearing and to obtain the Zoom information if necessary.

7. On or before **January 11, 2021**, the parties shall file **under seal** the list of all putative Settlement Class Members, see Revised Agreement ¶¶ 1.33, 2.02, along with their last known mailing address, as updated by the Settlement Administrator (the Class List).  The Class List must indicate which, if any, of the Settlement Class Members submitted requests for exclusion from the Settlement Class, and any Settlement Class Members whose Class Notice was returned as undeliverable, see id. ¶ 2.06.

8. The reasonableness and fairness of Class Counsel's request for fees and costs not to exceed 27.5% of the Total Settlement Amount shall be determined at the Fairness Hearing.

---

[9] All persons entering the Courthouse must present photo identification to Court Security Officers. Although cell phones, laptop computers, and similar electronic devices generally are not permitted in the building, attorneys may bring those items with them upon presentation to Court Security Officers of a Florida Bar card (presentation of the Duval County Courthouse lawyer identification card will suffice) or Order of special admission pro hac vice.  However, all cell phones must be turned off while in the courtroom.

9. The Court **rejects** the request for an Incentive Award to the Class Representative, and the request for preliminary approval of this award is **DENIED**.

10. The parties are directed to review the Court's Class Notice and insert the relevant information in paragraphs four and ten to create the Final Class Notice.[10]  The Court approves the Final Class Notice for distribution to those individuals on the Class List with a valid mailing address as determined by the Settlement Administrator in accordance with the Revised Agreement.  The following deadlines shall govern the distribution of the Final Class Notice:

   a. Defendants shall immediately provide a list of the approximately 371 putative members of the Settlement Class (the Class List) with their last known mailing address to the Settlement Administrator.

   b. The Settlement Administrator shall obtain updates, if any, to the addresses contained in the Class List as provided in paragraph 2.03 of the Revised Agreement.

   c. No later than **Friday, November 6, 2020**, the Settlement Administrator shall mail the Final Class Notice via first class mail to each Class Member at the address set forth on the Class List, as updated by the Settlement Administrator.

11. After conferral with Defendants, Plaintiff shall file a Motion to Finally Approve the Settlement Agreement on or before **January 11, 2021**.

---

[10] For the benefit of the parties the Court has highlighted the missing information.  The highlighting should be removed from the Final Class Notice.  Class Counsel should email the undersigned's chambers to request a copy of the Court's Class Notice in Word.

12. Class Counsel is authorized to represent and act on behalf of the Settlement Class with respect to all acts required by the Revised Agreement or such other acts which are reasonably necessary to consummate the spirit of the Revised Agreement.

13. All litigation, including discovery, other than further proceedings with respect to the Revised Agreement, is stayed pending further order of this Court.

14. Any Settlement Class Member may opt out by utilizing the procedures outlined in the Final Class Notice.  To be legally effective, all requests for exclusion must be postmarked on or before the deadline for exclusion set forth in the Final Class Notice.

15. If the Court finally approves the Revised Agreement, all persons falling within the Settlement Class who do not request to be excluded shall be bound by the terms of the Revised Agreement, any Judgment entered thereon, and any orders entered by the Court in connection with the settlement set forth in the Revised Agreement. Persons who submit valid and timely notices of their intent to be excluded from the Revised Agreement shall neither receive any benefits, nor be bound by the terms, of the Revised Agreement.

16. Any Settlement Class Member may appear and be heard as to why the proposed Revised Agreement, or any provision thereof, should not be approved as fair, reasonable, and adequate; provided, however, that no Settlement Class Member or any other person, shall be heard or entitled to contest the approval of the proposed Revised Agreement, or, if approved, the Judgment to be entered thereon, unless on or before **December 11, 2020**, that person has caused to be

filed written objections in the manner and form outlined in the Final Class Notice, stating all supporting bases and reasons, with the Clerk of the Court.

17. Attendance at the Fairness Hearing is not necessary in order for an objection to be considered by the Court; however, persons wishing to be heard orally in opposition to the approval of the Revised Agreement are required to indicate in their written objection their intention to appear at the Hearing.  All written objections shall conform to the requirements of the Final Class Notice and shall identify any and all witnesses, documents or other evidence of any kind that are to be presented at the Fairness Hearing in connection with such objections and shall further set forth the substance of any testimony to be given by such witnesses.

18. Any Settlement Class Member who does not make his or her objection in the manner provided in the preceding paragraph of this Order shall be deemed to have waived such objection and shall forever be foreclosed from making any objections to the fairness, adequacy, or reasonableness of the Revised Agreement.

19. The Court may, for good cause, extend any of the deadlines set forth in this Order without further notice to the Settlement Class.

20. If the Revised Agreement is not consummated for any reason, the instant Order shall be void and of no further effect and the parties and Settlement Class Members shall be returned to the positions each occupied prior to this Order and the August 6, 2020 Hearing, without prejudice to any legal argument any party may have asserted in this action.

21. The Revised Agreement and all negotiations, proceedings, documents prepared and statements made in connection with the Revised Agreement shall be without

prejudice to any party and shall not be admissible into evidence, and shall not be deemed or construed to be an admission or confession by any party, or any member of the Revised Agreement, of any fact, matter or proposition of law, and shall not be used in any manner for any purpose.

**DONE AND ORDERED** in Jacksonville, Florida, on October 6, 2020.

MARCIA MORALES HOWARD
United States District Judge

lc11
Copies to:

Counsel of Record

-29-