UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

NATALIE KUHR, on behalf of herself
and all others similarly situated,

      Plaintiff,                              CASE NO.: 3:19-cv-453-J-39MCR

v.

MAYO CLINIC JACKSONVILLE, a
Florida not for profit corporation and
PROFESSIONAL SERVICE BUREAU, INC.,
a Foreign corporation,

      Defendants.
_____/

**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW**

## INTRODUCTION

Plaintiff Natalie Kuhr ("Plaintiff") alleged that Defendants Mayo Clinic Jacksonville ("Mayo") and Professional Service Bureau, Inc. ("PSB") (Mayo and PSB collectively "Defendants") engaged in illegal medical billing practices or "balance billing." Put simply, Plaintiff alleged that Defendant Mayo collected and/or attempted to collect medical bills that were in excess of the amount permitted by Florida law, and that Defendant PSB assisted Mayo in doing so. Plaintiff alleged that this conduct violated state and federal debt collection and consumer protection statutes.

After engaging in limited motion practice and in-depth discovery, Plaintiff and Defendant (collectively, "Parties") began arm's length settlement discussions. After several failed attempts and extensive negotiations, the Parties finally achieved the proposed class settlement. The Settlement Agreement established a Total Settlement Amount of $1,015,502.20. This amount will pay Settlement Class Members a cash settlement payment for the release of all statutory, common law, and related claims alleged or that could have been alleged in the action against Defendant that relate, concern, arise from, or pertain in any way to Defendant Mayo's "balance billing" or Defendant PSB's assistance with the practice. Defendant Mayo also agreed to pay the administration costs up to $50,000.00, which proved to be more than enough to cover the full cost of administration.

Critically, Settlement Class Members will not need to undertake any rigorous steps to get the benefits of the Settlement.[1] This is an opt out, common-fund settlement, specifically designed to provide redress for the greatest number of Class Members possible. There is no claims process.

---

[1] All capitalized terms have the same meaning as stated in the Parties' Settlement Agreement.

Each class member will be mailed their compensation without the necessity of submitting a claim form.

The Settlement warrants final approval. It is fair, reasonable, and adequate under all relevant factors used by courts in the Eleventh Circuit. Out of the 371 class members, there was not a single objection to the Settlement and only one lone opt-out request. Thus, other Settlement Class Members evidently share in Plaintiff's belief that the proposed Settlement should receive final approval. Accordingly, Plaintiff requests that the Court finally approve the Settlement Agreement and enter an Order granting final approval.

## BACKGROUND

### A. THE UNDERLYING LAWSUIT

Florida Statute section 627.736(5)(a)(4), provides that an automobile insurer may limit reimbursement to the schedule of maximum charges when making payments to a medical provider under an insured's Personal Injury Protection ("PIP") policy. For emergency services and care provided by a hospital, the maximum reimbursement is eighty percent (80%) of seventy-five percent (75%) of the hospital's usual and customary charge. For example, if Defendant Mayo bills an insurance carrier three hundred dollars ($300.00) ("Billed Amount"), that amount is statutorily adjusted down to two-hundred and twenty-five dollars ($225.00) ("Adjusted Amount") and the insurance carrier is required to pay eighty percent (80%) of that Adjusted Amount, or one hundred eighty dollars ($180.00) ("Insurance Payment"). Similarly, pursuant to § 627.736, Fla. Stat. Plaintiff is only responsible for twenty percent (20%) of the Adjusted Amount or forty-five dollars ($45.00).

In other words, a patient, like Plaintiff, is not responsible for the difference between the Billed Amount and the Insurance Payment (in the above example $120.00), but is instead only responsible for the difference between the Adjusted Amount and the Insurance Payment (($45.00).

## B. Defendants' Alleged Balance Billing

Balance Billing refers to when a medical provider, in this case Mayo, attempts to bill more than twenty percent (20%) of the schedule of maximum charges, and bills the patients the balance between the Billed Amount and the Insurance Payment. Balance billing is prohibited. *See* § 627.736(5)(a)(4), Fla. Stat.

Plaintiff alleges that Defendants knowingly engaged in Balance Billing. On August 13, 2017, Plaintiff received medical treatment from Defendant Mayo. Defendant Mayo billed Plaintiff's PIP insurer, State Farm Mutual Automobile Insurance Company for services rendered. State Farm Mutual Automobile Insurance Company, pursuant to § 627.736, Fla. Stat., paid at least eighty percent (80%) of seventy-five percent (75%) of the usual and customary charge. Plaintiff's liability was at most twenty percent (20%) of seventy-five percent (75%) of Defendant's usual and customary charge.[2] Plaintiff alleged that despite knowing that it was not entitled to do so, Defendant Mayo "Balance Billed" Plaintiff for the difference between the Billed Amount and the Insurance Payment pursuant to § 627.736, Fla. Stat. and then Defendant Mayo referred the file to Defendant PSB to continue illegal collection attempts.

---

[2] Indeed, Plaintiff's PIP insurer paid one hundred percent (100%) of seventy-five percent (75%) of Defendant's usual and customary charge because Plaintiff's policy of insurance carries medical payments coverage. Medical payments coverage is an additional coverage type which requires the insurer, in this case State Farm Mutual Automobile Insurance Company, to pay the remaining twenty percent (20%). Therefore, Plaintiff's maximum liability was zero dollars ($0.00) because her PIP insurer was required to and did pay one hundred percent (100%) of seventy-five percent (75%) of the hospital's usual and customary charge.

Plaintiff asserts that Defendants knowingly Balance Billed, and alleged that not only are Defendants familiar with Florida's PIP restrictions, but also on April 9, 2018, Plaintiff's PIP insurer State Farm Mutual Automobile Insurance Company sent Defendant Mayo correspondence informing it that "100% of the reasonable amount" had already been paid. And on April 10, 2018, Plaintiff's PIP insurer State Farm Mutual Automobile Insurance Company, sent Defendant PSB correspondence informing it that "100% of the reasonable amount" had already been paid. Nonetheless, Defendants continued their Balance Billing.

The Complaint alleges that this conduct violated the Florida Consumer Collection Practices Act, § 559.55, Fla. Stat., *et seq.* ("FCCPA") and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"), and seeks statutory damages, attorneys' fees, and litigation costs from Defendants.

## C. THE SETTLEMENT NEGOTIATIONS

The Parties' Settlement was the product of serious, informed, arm's-length, and non-collusive negotiations by competent and experienced counsel. Before engaging in settlement negotiations, the Parties engaged in discovery and exchanged confidential information.

## D. THE PROPOSED SETTLEMENT

### 1. Statutory Damages under the FDCPA.

The FDCPA, 15 U.S.C. § 1692k, provides for statutory damages as follows.

> (B) in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector;

The FDCPA only applies to "Debt Collectors," or persons or entities collecting debts on behalf of others. *Kurtzman v. Nationstar Mortgage, LLC*, 709 Fed. Appx. 655, 658 (11th Cir. 2017)

(citing to *Crawford v. LVNV Funding, LLC*, 758 F.3d 1254, n. 3 (11th Cir. 2014) (overruled on other grounds) and *Harris v. Liberty Cty. Mgmt., Inc.*, 702 F.3d 1298, 1302 (11th Cir. 2012)). The FDCPA, therefore, would only apply to Defendant PSB—not to Defendant Mayo. One percent (1%) of Defendant PSB's net worth is substantially less[3] than $500,000.00. Thus, the maximum statutory damages at trial against PSB under the FDCPA is substantially less than the settlement value of $500,000.

2. **Statutory Damages under the FCCPA**

   The FCCPA, limits damages further, and states:

   > In a class action lawsuit brought under this section, the court may award additional statutory damages of up to $1,000 for each named plaintiff and an aggregate award of additional statutory damages up to the lesser of $500,000 or 1 percent of the defendant's net worth for all remaining class members; **however, the aggregate award may not provide an individual class member with additional statutory damages in excess of $1,000.**

   § 559.77, Fla. Stat.

   Here, Defendant Mayo is not a debt collector and is therefore not liable under the FDCPA—only the FCCPA, which limits damages not only to $500,000.00 or 1% of net worth, but also limits damages within those caps to $1,000.00 per class member. In this case there are 371 class members, making Mayo's maximum statutory damage liability $371,000.00.[4]

3. **Duplicative Damages**

   Importantly, where the FDCPA and FCCPA claims stem from a singular collection campaign, the law prohibits double recovery. *Ugarte v. Sunset Const., Inc.*, No.

---

[3] Defendant PSB requested that its net worth by maintained as confidential.
[4] Defendant Mayo's net worth is such that the one percent (1%) limitation would not apply, and the class would be limited to $500,000.00. However, and as stated *supra*, the statute further limits the damages available from Defendant Mayo to no more than $1,000 per class member, or $371,000.00.

8:07CV735T23EAJ, 2008 WL 4723600, at *2 (M.D. Fla. Oct. 21, 2008) (declining to recommend an award of $1,000 from each defendant under the FDCPA and FCCPA, because the defendants were extensions of each other and "[could not] be considered distinctly separate debt collectors for purposes of the violation under the FDCPA and FCCPA."); *Blandina v. Midland Funding, LLC*, No. CIV.A. 13-1179, 2015 WL 456704, at *2 (E.D. Pa. Feb. 2, 2015) (damages are capped at $500,000.00 total, regardless of the number of defendants); *Wilson v. Transworld Sys., Inc.*, No. 5:00-CV-135-OC-10GRJ, 2002 WL 1379246, at *1 (M.D. Fla. Mar. 29, 2002) (reflecting that the maximum award in a case with more than one defendant would be $500,000.00 total).

Thus, the maximum amount of statutory damages available to the class at trial was $409,000.00: $371,000.00 from Defendant Mayo and $38,000.00 from Defendant PSB. Here, the settlement includes $500,000.00 in statutory damages—in excess of the total amount of statutory damages available to the class at trial.

### 4. Actual Damages

After substantial discovery, document production, discussion, and analysis it was determined Defendant Mayo charged a total of $515,502.20 allegedly in excess of the amount permitted under § 627.736(5)(a)(4), Fla. Stat. The Settlement includes 100% of this amount in the form of a waiver or refund to Settlement Class Members.

### 5. Settlement Benefits

The total monetary amount of the settlement is $1,015,502.20, plus administration costs up to $50,000.00. This represents $500,000.00 in statutory damages—$91,000.00 more than would be possible at a trial on the merits (assuming recovery of the maximum statutory damages under both the FCCPA and FDCPA), and $515,502.20, the full amount of actual damages sustained by the class. Defendants are also responsible for paying the first $50,000.00 in settlement

administration costs, which in this case is enough to cover the entirety of the administration costs. In addition to the monetary benefits, Defendants have agreed to forever refrain from Balance Billing.

Settlement Class Members have already received a 100% reimbursement or waiver of their individual actual damages. After payment of attorneys' fees, settlement relief under the Settlement Agreement is a full refund or waiver of their actual damages (total $515,502.20) plus **$600.00 or more**[5] per class member.

### 6. The Settlement Class and the Release

The Settlement Class is an opt-out class under Rule 23(b)(3) of the Federal Rules of Civil Procedure that includes the following class of persons:

> All Florida Residents who, according to Defendant MAYO's and PSB'S readily accessible data and electronic records from January 9, 2017, through May 28, 2020, ("Class Period"), were charged medical-related fees in excess of the amount allowed under § 627.736(5)(a)(4), Fla. Stat. by Defendant MAYO and/or PSB acting on MAYO's behalf, and includes all members of the Mayo Class and FDCPA Subclass as defined in the Complaint, and as set forth in this Agreement.

*See* Doc. 44 at ¶ 1.32.

Pursuant to the Revised Agreement, the Parties agree, for settlement purposes only, to the certification of a defined settlement class (Settlement Class). *See* Doc. 44 Revised Settlement Agreement. The parties define the Settlement Class, which includes 371 potential members (Class Members), as a combination of the "Mayo Class" and the "FDCPA Subclass." *See* Doc. 44 ¶¶ 1.12, 1.18, 1.32; *see also* Doc. 41 Plaintiff's Renewed Unopposed Motion for Preliminary

---

[5]Plaintiff's counsel will reduce its fee request again to 25%. This additional reduction will result in a payment of $665.20 to each class member, which is in addition to the reimbursement or credit that each potential class member previously received. This payment amount was calculated based upon 370 class members, because one potential class member opted out of the class.

Approval of Class Action Settlement, Certification of the Settlement Class, Approval of Class Notice, Scheduling of Final Approval Hearing, and Incorporated Memorandum of Law ("Renewed Motion") at 6; Doc. 41-1 proposed Order Preliminarily Approving Settlement and Certifying Settlement Class ("Proposed Order") at ¶ 4; Doc. 45 Court's Order preliminarily approving class action settlement ("Preliminary Approval Order") at p. 5-6, and Doc. 45-1 Court's Notice of Proposed Class Action Settlement ("Court's Notice") at ¶ 2. The Mayo Class constitutes:

> [A]ll Florida residents who according to readily accessible data and other electronic records of Mayo, at any time during the period of January 9, 2017, through May 28, 2020, were charged by Defendant Mayo medical-related fees related to motor vehicle accidents in excess of the amount allowed under Florida law.

*See* Doc. 45-1 at ¶ 2.

The FDCPA Subclass is defined as:

> [A]ll Florida Residents who according to readily accessible data and other electronic records of Mayo and PSB, at any time during the period of January 9, 2018 through May 28, 2020, were charged by Defendant PSB acting on Mayo's behalf medical-related fees related to motor vehicle accidents in excess of the amount allowed under Florida law.

*See Id.*

Excluded from the Settlement Class are any: 1) any Judge or Magistrate presiding over this action and members of their families; 2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest and its current or former employees, officers and directors; 3) persons who properly execute and file a timely request for exclusion from the Classes; 4) the legal representatives, successors, or assigns of any such excluded persons; 5) Plaintiff's counsel and Defendants' counsel. *See* Doc. 41 at p. 6.

Settlement Class Members who did not opt-out will release the claims raised and all claims that could have been raised in this case. *See* Doc. 44 at ¶¶ 1.24, 4.01, 4.02. The release is for all claims against Defendants related to Defendants' Balance Billing for the specified time period.

### 7. Attorney's Fees, Expenses, and Incentive Award

As more fully outlined in Plaintiff's Motion for an Award of Attorney Fees, Expenses, and Incentive Award (Doc. 42), the Settlement originally sought 33.3% of the Total Settlement Amount, Plaintiff's counsel subsequently reduced its request to 27.5% and has done so again to 25% of the Total Settlement Amount—if approved by the Court, this will result in a payment of **$665.20** to each class member who did not opt out, in addition to their refund or waiver. This is, in the realm of class actions, a substantial payment to each class member. The incentive award to Plaintiff was stricken by the Court in light of recent Eleventh Circuit Precedent (*See* Doc. 45 at p. 17, 26).

### E. Preliminary Approval and Notice

On September 8, 2020, Plaintiff filed her Renewed Motion (Doc. 41). On October 6, 2020, the Court entered the Preliminary Approval Order. (Doc. 45).

On November 6, 2020, the Settlement Administrator, mailed the Court approved Notice of Class Action Settlement to each Settlement Class Member at the address set forth on the Settlement Class Member List. (Exhibit A, Angion Decl. at ¶ 7).

### F. Class Members' Response to the Proposed Settlement

The response to the Settlement has been very positive. There are zero (0) Settlement Class Members who objected to the Settlement, and only one (1) single person opted out—a great display of support for the class settlement. (Exhibit A, Angion Decl. at ¶ 11).

## ARGUMENT

The Settlement is fair, adequate, and reasonable. The Court should grant Plaintiff's Motion for Final Approval.

### A. THE PARTIES PROVIDED THE BEST PRACTICABLE NOTICE

Before a court can exercise jurisdiction over the claims of absent class members, certain minimal due process requirements must be satisfied. *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1378 (S.D. Fla. 2007). Absent class members must receive notice and an opportunity to be heard and to participate in the litigation whether in person or through counsel. Fed. R. Civ. P. 23(c)(2)(B). The notice must be the "best practicable, 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, (1950)).

Here, there were two forms of notice: Direct Mail Notice and a website. (Exhibit A, Angeion Decl. at ¶¶ 6-9). The Settlement Administrator also set up a case specific hotline. (Exhibit A, Angeion Decl. at ¶ 10). Defendants provided the Settlement Administrator with contact information for 371 Settlement Class Members. On November 6, 2020, the Administrator mailed the Court-approved Class Notice via U.S. First Class Mail, to each Settlement Class Member. (Exhibit A, Angion Decl. at ¶ 7). Only seven (7) (less than 2%) of the initial Notices mailed were returned as undeliverable. *Id.* at ¶ 8. The Settlement Administrator then ran six (6) of those seven (7) Notices through address verification searches. Of these six (6) records a new address was not located for any records. Fortunately, however, the few undeliverable records were also provided to Counsel, who was able to find three (3) updated records in Defendant's records. *Id.* Angeion updated the Class Member database and re-mailed Notices to the Class Members located via this

process. As a result, a total of three (3) Notices were re-mailed and of these re-mailed Notices, none were returned by the USPS a second time, resulting in only four (4)[6] undeliverable Notices (*Id.*)—a fantastic 99% delivered rate.

## B. THE SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE

The law has long been settled in the Eleventh Circuit: "In determining whether to approve a proposed [class action] settlement, the cardinal rule is that the district court must find that the settlement is fair, adequate and reasonable and is not the product of collusion between the parties." *Perez*, 501 F. Supp. 2d at 1379 (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)).[7] "Determining the fairness of the settlement is left to the sound discretion of the trial court." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). The Court's exercise of discretion should be "informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Id.* As then-Chief Judge King stated in *Behrens v. Wometco Enterprises, Inc.*:

> Litigants should be encouraged to determine their respective rights between themselves. This policy has special importance in class actions with their notable uncertainty, difficulties of proof, and length. Settlements of complex cases contribute greatly to the efficient utilization of scarce judicial resources, and achieve the speedy resolution of justice, for a just result is often no more than an arbitrary point between competing notions of reasonableness.

---

[6] Defendant Mayo has also committed to providing the Settlement Administrator with updated addresses for those four Settlement Class Members, should Mayo receive updated information prior to the distribution of settlement funds.

[7] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

118 F.R.D. 534, 538 (S.D. Fla. 1988) (internal citations omitted). To aid in this determination, the Eleventh Circuit has identified six factors that a district court should examine when assessing whether a proposed settlement is fair, adequate and reasonable. These factors include:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett*, 737 F.2d at 986. "In evaluating these considerations, the district court should not try the case on the merits." *Behrens*, 118 F.R.D. at 539 (citing *Cotton*, 559 F.2d at 1330). Rather, the court "must rely upon the judgment of experienced counsel and, absent fraud, 'should be hesitant to substitute its own judgment for that of counsel.'" *Assoc. for Disabled Ams. v. Amoco Oil Co.*, 211 F.R.D. 457, 467 (S.D. Fla. 2002) (quoting *Cotton,* 559 F.2d at 1330).

### 1. THE *BENNETT* FACTORS WEIGH IN FAVOR OF THE SETTLEMENT

As applied to this case, the factors outlined in *Bennett* support a finding that the Settlement is fair, adequate, reasonable, and worthy of final approval.

#### a. *BENNETT* FACTOR ONE: LIKELIHOOD OF SUCCESS AT TRIAL

Where a substantial question exists regarding the likelihood of success at trial, this factor weighs in favor of approving a proposed class action settlement. *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1330-31 (S.D. Fla. 2001). Here, Plaintiff faced hurdles both on the merits and in obtaining contested class certification. There were two (2) defendants and two (2) statutory causes of action, unified in their defense, but each posing their own questions as to liability.

Liability against Defendant PSB under both the FCCPA and FDCPA was, by no means, a foregone conclusion. Debt collectors are not under a duty to individually investigate the validity of debts if such investigation requires more than a cursory review. The Eleventh Circuit has made

clear that while a debt collector cannot blindly accept what a creditor says with respect to debt collection procedures, it is under no duty to individually calculate and confirm debt amounts.

> While we agree with *Smith*'s principle that debt collectors have no duty to independently investigate and verify debts, we point out that Owen's case is factually distinguishable from *Smith*. The FDCPA violation in *Smith* stemmed from a $10 error attributed to the creditor's incorrect accounting figures, which were wrongly reported to the debt collector. 953 F.2d at 1032. The Sixth Circuit cited only one procedure: a referral form signed by the creditor that it would only claim amounts "legally due and owing." *Id.* The Sixth Circuit, providing scant analysis of the issue, held that the debt collector was entitled to the bona fide error defense, since it reasonably relied on the accuracy of the creditor's debt amount and was not required to perform an independent investigation to assure its accuracy.

*Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1277 (11th Cir. 2011) citing *Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1032 (6th Cir.1992). Here, discovery revealed that Defendant PSB did not calculate the amounts owed, but rather, relied upon Defendant Mayo, a subject matter expert in the field of medical billing and insurance, to determine the amounts owed under Florida's various insurance statutes. While Plaintiff felt strongly that the letter she sent to Defendant PSB adequately placed Defendant PSB on notice, the law may have insulated Defendant PSB from liability altogether.

Liability against Defendant Mayo also posed challenges. First, "[t]o show a violation of section 559.72(9), "it must be shown that *a legal right that did not exist was asserted* and that the person had actual knowledge that the right did not exist." *Read v. MFP, Inc.*, 85 So. 3d 1151, 1155 (Fla. 2d DCA 2012) citing *Pollock v. Bay Area Credit Serv., LLC,* No. 08–61101–Civ, 2009 WL 2475167, at *9 (S.D.Fla. Aug.13, 2009) (emphasis added). "Thus, for example, a plaintiff may establish a violation of section 559.72(9) by showing that the debt collector garnished wages in violation of the statutory requirements for garnishment, *see Cliff v. Payco Gen. Am. Credits,*

*Inc.,* 363 F.3d 1113, 1124 (11th Cir.2004), or actively attempted to collect a debt when the debt collector knew that the consumer had filed for bankruptcy protection, *cf. Bacelli v. MFP, Inc.,* 729 F.Supp.2d 1328, 1337 (M.D.Fla.2010), or attempted to collect post-judgment interest in an amount greater than the statutory rate, *cf. N. Star Capital Acquisitions, LLC v. Krig,* 611 F.Supp.2d 1324, 1336–37 (M.D.Fla.2009), or attempted to collect a debt that had already been satisfied, *see Williams v. Streeps Music Co.,* 333 So.2d 65, 67 (Fla. 4th DCA 1976). In each of those cases, the debt collector asserted specific legal rights concerning the collection of the debt at issue when it did not legally possess those rights." *Read v. MFP, Inc.,* 85 So. 3d 1151, 1155 (Fla. 2d DCA 2012) (citations within original). Here, while Plaintiff was again confident that it could prove actual knowledge, this was likely a factual issue for a jury.

Second, Defendant Mayo presented a bona fide error defense. "A debt collector asserting the bona fide error defense must show by a preponderance of the evidence that its violation of the FDCPA '(1) was not intentional; (2) was a bona fide error; and (3) occurred despite the maintenance of procedures reasonably adapted to avoid any such error.'" *Bacelli v. MFP, Inc.,* 729 F. Supp. 2d 1328, 1332–33 (M.D. Fla. 2010)[8].

Importantly, for a defendant to succeed on a bona fide error defense "does not require debt collectors to take every conceivable precaution to avoid errors; rather, it only requires reasonable precaution." *Kort v. Diversified Collection Servs., Inc.,* 394 F.3d 530, 539 (7th Cir.2005). However, the required procedures must be reasonably adapted to avoid the specific error at issue. *Johnson v. Riddle,* 443 F.3d 723, 729 (10th Cir. 2006). Moreover, "the procedures ... must

---

[8] Florida courts must give "great weight" to federal interpretations of the FDCPA when interpreting and applying the FCCPA. § 559.77(5), Fla. Stat.; *see also Read v. MFP, Inc.,* 85 So. 3d 1151, 1153 (Fla. 2d DCA 2012).

be explained, along with the manner in which they were adapted to avoid the error." *Reichert v. Nat'l Credit Sys., Inc.*, 531 F.3d 1002, 1007 (9th Cir.2008).

While once again Plaintiff was confident in her claims, Mayo's bona fide error defense may have been persuasive to a jury and at a minimum likely created enough factual issues to get to a jury. Mayo maintains billing procedures, and as evidenced by the relatively small class size, ordinarily maintains those policies.

In addition, Plaintiff's ability to obtain contested class certification was far from certain. Although Plaintiff believes this case is ripe for certification and the Court could certify a class, the settlement takes the uncertainty (and the manageability and superiority issues) off the table, clearing the way for an excellent class resolution.

### b. *Bennett* Factors Two and Three: Range of Recovery and the Point at Which Settlement is Fair

"The second and third considerations of the *Bennett* test are easily combined." *Behrens*, 118 F.R.D. at 541. A district court must first determine the appropriate standard of damages (to calculate the range of recovery), and then determine where in this range of recovery a fair, adequate and reasonable settlement amount lies. *Id.* The existence of strong defenses to the claims presented makes the possibility of a low recovery quite reasonable. *See id.* at 542 (explaining that "a settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery").

Plaintiff's FCCPA claim, while directed at both Defendants, can only truly be effectuated against Defendant Mayo because of the abovementioned restrictions on duplicative damages. The statutory damage recovery at trial would therefore be capped at $371,000.00 against Defendant Mayo. *See* Fla. Sta. §559.72(2). Plaintiff's FDCPA claim against Defendant PSB is also capped. The FDCPA limits statutory damages recovery for the Settlement Class as the lesser of $500,000

or one percent (1%) of Defendant PSB's net worth. *See* 15 U.S.C. § 1692k(a). Defendant PSB provided current net worth data which revealed that the maximum amount of money that Plaintiff and the Class Members could have won at trial against Defendant PSB was substantially less than the maximum award. The total statutory damages, available, therefore were $409,000.00.

The settlement, however, includes $500,000.00 in statutory damages which is more (in terms of statutory damages, excluding attorneys' fees) than Plaintiff and the Class Members could have won at trial. That amount, plus payment of 100% of the actual damages in the amount of $515,502.20 and administration costs of up to $50,000.00, makes this settlement a fair, adequate and reasonable settlement amount. Further, there is no reverter clause in the settlement agreement, so none of the funds will revert to Defendants—all unclaimed funds (uncashed checks and the potentially four (4) undeliverable) will be given to a Cy Pres recipient, Jacksonville Legal Aid.

Given the capped range of recovery on a class basis, and the relief that is part of the Settlement Agreement, the Settlement can only be categorized as fair and reasonable.

**c. *Bennett* Factor Four: Complexity, Expense, and Duration of the Litigation**

The law favors compromises in large part because they are often a "speedy and efficient resolution of long, complex, and expensive litigation." *Behrens*, 118 F.R.D. at 543. Moreover, as the Eleventh Circuit has noted: "In these days of increasing congestion within the Federal court system, settlements contribute greatly to the efficient utilization of our scarce judicial resources." *Cotton*, 559 F.2d at 1331.

The issues in this case, both technical and legal, are complex. If this case proceeded to trial (or even appeal), the costs would increase dramatically for all parties. The intrinsic value of the net settlement payment to Settlement Class Members is readily apparent when one considers the risks inherent in continued and protracted litigation, including adverse summary judgment ruling,

adverse class certification ruling, adverse jury verdict and/or a jury verdict for less than the maximum statutory damages (the FDCPA/FCCPA damage caps are maximums not floors and are in the discretion of the jury). Accordingly, there was substantial risk to Plaintiff and the Class members at the time of settlement. Thus, the costs and uncertainty of litigation, and the expense and delay that accompany the possible appeal process, support approval.

While the Parties could have litigated the case to judgment and taxed the resources of the litigants and the Court, they chose instead to rationally and reasonably forgo the expense and uncertainty of continued litigation, and focus their efforts on achieving a fair and adequate settlement that accounted for the risks of further litigation.

### d. *Bennett* Factor Five: Substance and Amount of Opposition to the Settlement

The Settlement should also be approved because the Settlement Class Members have overwhelmingly accepted it. "In determining whether a proposed settlement is fair, reasonable and adequate, the reaction of the class is an important factor." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005).

A low percentage of objections demonstrates the reasonableness of a settlement. *Id.* Here, there are zero objectors and only a single opt-out request. These statistics militate in favor of the Court approving the Settlement Agreement.

### e. *Bennett* Factor Six: The Stage of the Proceedings

A court evaluates the stage of the proceedings at the time of settlement to ensure that plaintiffs have access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of the settlement against further litigation. *See Behrens*, 118 F.R.D. at 544.

Here, the initial complaint was filed on January 9, 2019. The parties exchanged a tremendous amount of discovery both formally and informally. The parties also engaged in

numerous conference calls to synthesize the information and understand what occurred. Although the Parties reached a class-wide settlement at a relatively early stage of the litigation, they knew the merits of the case and the associated risks, and it took the Parties two years to reach this current point.

### 2. The Judgment of Experienced Counsel and the Absence of Collusion Further Support the Settlement

In addition to the *Bennett* factors, a district court may also rely upon the judgment of experienced counsel for the parties. *See Greco v. Ginn Dev. Co., LLC*, No. 14-11443, --- F. App'x ---, 2015 WL 7755673, at *3 (11th Cir. Dec. 2, 2015) (citing *Cotton*, 559 F.2d at 1330); *Perez*, 501 F. Supp. 2d at 1384. Absent evidence of fraud or collusion, a court should "be hesitant to substitute its own judgment for that of counsel." *Greco*, 2015 WL 7755673 at *3.

The Court has already concluded that Class Counsel has the experience to adequately represent the Settlement Class Members in this action (Doc. 45 at p. 12), and Defendants' counsel are equally well-versed in class action litigation. Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion. *See, e.g., Ass'n for Disabled Ams., Inc.*, 211 F.R.D. at 470.

The Settlement is therefore reasonable, adequate, and fair.

### CONCLUSION

This Settlement represents an excellent result for the Settlement Class Members, which is fair, adequate, and reasonable. Accordingly, Plaintiff's Motion for Final Approval should be granted and the Court should approve the parties Settlement Agreement.

WHEREFORE, Plaintiff Natalie Kuhr on behalf of herself and all others similarly situated, respectfully requests this Court enter a final order and judgment approving this Settlement,

directing the Statutory Damage Fund to be distributed in accordance with the Revised Settlement Agreement, approving Class Counsel's request for 25% of the Total Settlement Amount ($253,875.55) as attorneys' fees and costs, dismissing the class action claims with prejudice, and awarding any further relief deemed just and proper.

## CERTIFICATE OF CONFERRAL

Counsel for Plaintiff represents and warrants that they conferred with Counsel for Defendants regarding this Motion for Final Approval and Defendants do not oppose the relief sought herein.

Respectfully submitted this 11th day of January, 2021, by:

> ZEBERSKY PAYNE SHAW LEWENZ, LLP
> *Counsel for Plaintiff and the Class*
> 110 Southeast 6th Street, Suite 2150
> Fort Lauderdale, Florida 33301
> Telephone: 954-989-6333
> Facsimile: 954-989-7781
> Primary Emails: jshaw@zpllp.com;
> kslaven@zpllp.com
> Secondary Emails: mperez@zpllp.com;
> medmonson@zpllp.com
>
> _____
> JORDAN A. SHAW
> Fla. Bar No. 111771

## CERTIFICATE OF SERVICE

I hereby certify that on January 11, 2021, a copy of the foregoing document was filed electronically. Notice of this filing will be sent be e-mail to all parties by operation of the Court's electronic filing system as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

_____
JORDAN A. SHAW