## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

NATALIE KUHR, on behalf of herself
and all others similarly situated,

    Plaintiff,                      CASE NO.: 3:19-cv-453-MMH-MCR

v.

MAYO CLINIC JACKSONVILLE, a
Florida not for profit corporation and
PROFESSIONAL SERVICE BUREAU,
INC., a Foreign corporation,

    Defendants.

_____/

## FINAL ORDER AND JUDGMENT

**THIS CAUSE** is before the Court on Plaintiff's Unopposed Motion for

Final Approval of Class Action Settlement and Incorporated Memorandum of

Law (Doc. 47; Final Approval Motion), filed on January 11, 2021, and Plaintiff's

Unopposed Motion for Award of Attorneys' Fees and Costs and for Named

Plaintiff's Service Award (Doc. 42; Fee Motion), filed on September 8, 2020.

Pursuant to Rule 23, Federal Rules of Civil Procedure (Rule(s)), Plaintiff

requests that the Court finally approve the class action settlement and the

attorneys' fees award. See Final Approval Motion at 3; Fee Motion at 19.[1] The

---

[1] In the Fee Motion, Class Counsel also requested approval of an incentive award to the
representative plaintiff. See Fee Motion at 16-19. However, soon after the filing of that
Motion, the Eleventh Circuit Court of Appeals held, in a published decision, that such
incentive awards are impermissible. See Johnson v. NPAS Solutions, LLC, 975 F.3d 1244,

Court conducted a final fairness hearing on January 20, 2021, to determine the fairness, reasonableness, and adequacy of the proposed settlement of this action, and counsel for both parties appeared via Zoom at the hearing. See Minute Entry (Doc. 52; Fairness Hearing).[2]  In addition, the Court has reviewed the Final Approval Motion and Fee Motion, together with all other submissions. As set forth below, the Court will approve the class action settlement and enter an award of reasonable attorneys' fees.

## I.    PROCEDURAL HISTORY

Plaintiff Natalie Kuhr initiated this action in state court on January 9, 2019, against Defendants Mayo Clinic Jacksonville (Mayo) and Professional Service Bureau, Inc. (PSB). See Class Action Complaint (Doc. 3; Complaint). PSB removed the action to this Court, with Mayo's consent, on April 22, 2019. See Notice of Removal (Doc. 1; Notice). In the Complaint, Plaintiff asserts claims against Mayo and PSB under the Florida Consumer Collection Practices Act (FCCPA), Fla. Stat. § 559.72, and against Defendant PSB under the Fair

_____

1260-61 (11th Cir. 2020).  Accordingly, in the October 6, 2020 Order granting preliminary approval of the settlement, the Court rejected the request for an incentive award.  See Order (Doc. 45) at 17-18, 26.  At the fairness hearing, Class Counsel conceded that the Johnson decision prohibited the Court from approving an incentive award.

[2] The class notice informed the class members of the date for the Fairness Hearing, and instructed class members who wished to attend to review the Court docket prior to the Hearing for information on whether it would take place in-person or remotely via telephone or videoconference.  On January 6, 2021, the Court entered a Notice of Hearing (Doc. 46) stating that the Fairness Hearing would take place via Zoom and providing instructions on how members of the public may attend.  Nevertheless, no class members opted to attend the Fairness Hearing.

Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692. <u>See</u> Complaint, Cts. I-IV. Plaintiff alleges that Mayo billed, and PSB attempted to collect, medical fees in excess of the amounts permitted under Florida law from certain Florida residents whose medical care was covered by personal injury protection (PIP) insurance. <u>See</u> <u>generally</u> Complaint.

Pursuant to section 627.736(5)(a) of the Florida Statutes, medical providers who render treatment "to an injured person for a bodily injury covered by [PIP] insurance may charge the insurer and injured party only a reasonable amount pursuant to this section for the services and supplies rendered . . . ." <u>See</u> Fla. Stat. § 627.736(5)(a). The statute includes a schedule of the amounts a medical provider may charge (the Maximum Charge) and provides that the insurer "may limit reimbursement to 80 percent" of the Maximum Charge. <u>See</u> <u>id.</u> § 627.736(5)(a)(1). In addition, the statute states that "[i]f an insurer limits payment as authorized by subparagraph 1., [the medical provider] may not bill or attempt to collect from the insured any amount in excess of such limits, except for amounts that are not covered by the insured's [PIP] coverage due to the coinsurance amount or maximum policy limits." <u>See</u> <u>id.</u> § 627.736(5)(a)(4.).

Kuhr contends that Mayo violated these provisions by attempting to collect from patients amounts in excess of those permitted under this statute, a practice known as "balance billing." <u>See</u> Complaint ¶¶ 27-36. According to Kuhr, when Mayo's attempts to collect this "illegitimate debt" failed, Mayo referred

the matter to PSB. Kuhr alleges that her insurer informed PSB that the insurer had paid the amount legitimately owed, but PSB nevertheless continued to send Kuhr correspondence attempting to collect the excess debt. Id. ¶¶ 37-39. Kuhr contends that by attempting to collect a debt that Mayo and PSB knew was not legitimately owed, Mayo and PSB both violated the FCCPA, and PSB violated the FDCPA. See id. ¶¶ 55-66. Both Mayo and PSB filed answers denying these allegations and raising certain affirmative defenses. See Defendant Mayo Clinic Jacksonville's Answer and Affirmative Defenses to Plaintiff's Class Action Complaint (Doc. 4; Mayo Answer), filed April 22, 2019; Defendant Professional Service Bureau, Inc.'s Answer and Affirmative Defenses to Plaintiff's Class Action Complaint (Doc. 8; PSB Answer), filed April 29, 2019.

As alleged in the Complaint, Plaintiff sought to bring the claims in this case as a class action on behalf of herself and a class of similarly situated individuals. See Complaint ¶¶ 46-54.  In light of this, Local Rule 4.04(b) required Plaintiff to "move for a determination under Rule 23(c)(1) as to whether the case is to be maintained as a class action," within ninety days "following the filing of the initial complaint in such an action, unless the time is extended by the Court for cause shown . . . ."  See Local Rule 4.04(b), United States District Court, Middle District of Florida.[3]  However, Plaintiff failed to

---

[3] The Local Rules of the United States District Court for the Middle District of Florida were recently amended, taking effect February 1, 2021.  This case was litigated under the previous

file a motion for class certification by the deadline.  As a result, Defendants objected to engaging in class-wide discovery, apparently alerting Plaintiff to the missed deadline and prompting her to file a belated motion for an extension of the time to file a motion for class certification.  <u>See</u> Plaintiff's Motion for Clarification Regarding the Class Certification Deadline, or in the Alternative, Motion for Extension of Time to File Motions for Class Certification (Doc. 24), filed December 6, 2019.  The Court exercised its discretion to grant the motion in an Order (Doc. 26) entered January 14, 2020.  The parties then engaged in discovery, and after negotiating amongst themselves, were able to reach a proposed class-wide settlement without needing to attend the mediation scheduled in this case.  <u>See</u> Joint Notice of Proposed Class Settlement (Doc. 28), filed March 18, 2020.  Notably, the parties filed the Joint Notice of Proposed Class Settlement just over two months after the Court's Order extending the class certification deadline.

On June 3, 2020, Plaintiff filed an Unopposed Motion for Preliminary Approval of Class Action Settlement, Certification of the Settlement Class, Approval of Class Notice, Scheduling of Final Approval Hearing, and Incorporated Memorandum of Law (Doc. 35; Initial Motion) seeking preliminary approval of the settlement as well as approval of the proposed class

_____

version of the Court's Local Rules and citations herein refer to the Local Rules in effect at that time.

notice. See generally Initial Motion, Ex. 1: Class Action Settlement Agreement and Release (Doc. 35-1; Settlement Agreement); see also Settlement Agreement, Ex. B: Proposed Notice. Upon review of the Initial Motion and attachments, the Court had several concerns regarding the proposed class definition, the terms of the Settlement Agreement, and the Proposed Notice. See Order (Doc. 36), entered July 17, 2020. As such, the Court set the matter for a hearing, id., at which all parties appeared via Zoom on August 6, 2020. See Minute Entry (Doc. 40; August Hearing). In accordance with the matters discussed at the August Hearing, Plaintiff filed Plaintiff's Renewed Unopposed Motion for Preliminary Approval of Class Action Settlement, Certification of the Settlement Class, Approval of Class Notice, Scheduling of Final Approval Hearing, and Incorporated Memorandum of Law (Doc. 41; Renewed Motion) on September 8, 2020, along with a Revised Class Action Settlement Agreement and Release Pursuant to Federal Rule 23 (Doc. 41-1; Revised Agreement), and a revised proposed class notice (Doc. 41-3; Revised Proposed Notice). Also on September 8, 2020, and as directed by the Court at the August Hearing, Plaintiff filed the instant Fee Motion.[4]

---

[4] In accordance with Eleventh Circuit precedent and Rule 23(h), the Court required Class Counsel to file the Fee Motion prior to the class notice and objection period such that class members had all the information necessary to consider the fee request and decide whether to object. See Johnson, 975 F.3d at 1252 ("Rule 23(h)'s plain language requires a district court to sequence filings such that class counsel file and serve their attorneys'-fee motion before any objection pertaining to fees is due.").

Upon review of the Renewed Motion, the Court entered the Preliminary Approval Order conditionally certifying the Settlement Class.  See Preliminary Approval Order at 23-24.  In addition, the Court reviewed the Revised Proposed Notice and found it necessary to re-work the notice to promote clarity and provide the Class Members with sufficient information regarding their rights and the proposed settlement.  As such, the Court prepared the Court's Class Notice and attached it to the Preliminary Approval Order for distribution to the Settlement Class.  Except as to the amount of attorneys' fees and the request for an incentive award,[5] the Court then preliminarily approved the Revised Agreement and set forth the procedures and timeframes for dissemination of the Court's Class Notice to the Settlement Class.  See generally Preliminary Approval Order at 24-26.  Plaintiff now seeks final approval of the Revised Agreement, as well as approval of an award of attorneys' fees to Class Counsel.

---

[5] The Court deferred approval of Class Counsel's request for attorneys' fees until after the Fairness Hearing and denied the request for an incentive award as noted above.  See supra note 1.

## II.    THE SETTLEMENT TERMS[6]

### a. CLASS DEFINITIONS AND EXCLUSIONS

The Revised Agreement (Doc. 44) provides for the recovery of statutory and actual damages for the Settlement Class, which is an opt-out class under Rule 23(b)(3). As conditionally certified in the Preliminary Approval Order, the Settlement Class consists of the Mayo Class and the FDCPA Subclass, defined as follows:

> The Mayo Class:
>
> [A]ll Florida residents who according to readily accessible data and other electronic records of Mayo, at any time during the period of January 9, 2017 through May 28, 2020, were charged by Defendant Mayo medical-related fees related to motor vehicle accidents in excess of the amount allowed under Florida law.
>
> The FDCPA Subclass:
>
> [A]ll Florida Residents who according to readily accessible data and other electronic records of Mayo and PSB, at any time during the period of January 9, 2018 through May 28, 2020, were charged by Defendant PSB acting on Mayo's behalf medical-related fees related to motor vehicle accidents in excess of the amount allowed under Florida law.

See Preliminary Approval Order at 23-24.[7] As defined, the Settlement Class included 371 potential members.

---

[6] Except where otherwise noted, all terms, conditions, defined terms, and agreements contained in the Revised Agreement are incorporated herein by reference and all capitalized terms used in this Final Order and Judgment shall have the meanings set forth in the Revised Agreement.

[7] The Preliminary Approval Order excluded the following individuals from the Settlement Class:

## b. RECOVERY

The total monetary amount of the settlement is $1,015,502.20, plus administration costs up to $50,000.00. This represents $515,502.20 in actual damages, the full amount of such damages sustained by the Settlement Class. Indeed, pursuant to the Revised Agreement and based on Mayo's representations at the Fairness Hearing, all 371 potential class members have already received "a full refund or waiver of all amounts charged in excess of the amount permitted" under § 627.736(5)(a)(4) of the Florida Statutes.  See Revised Agreement ¶¶ 3.01(a), 3.14. The Revised Agreement also establishes a fund of $500,000, defined as the "Statutory Damage Fund," from which Class Counsel's fees will be paid, with the remainder divided equally among the Settlement Class as statutory damages.[8] Defendants are also responsible for

---

a) any Judge or Magistrate presiding over this action and members of their families; b) Defendants, Defendants' subsidiaries, parents, successors, predecessors,  and any entity in which Defendants or their parents have a controlling interest and its current or former employees, officers and directors; c) persons who properly execute and file a timely request for exclusion from the Classes; d) the legal representatives, successors, or assigns of any such excluded persons; e) Plaintiff's counsel and Defendants' counsel.

See Preliminary Approval Order at 24.

[8] Class Counsel characterize this $500,000 as a recovery of statutory damages "in excess" of the amount the Class could have received in statutory damages at trial.  See Final Approval Motion at 7.  In the Final Approval Motion, Class Counsel explain at length that the total amount of statutory damages recoverable at trial would have been $409,000, comprised of $371,000 under the FCCPA ($1,000 per Class Member), and $38,000 under the FDCPA (based on 1% of PSB's net worth). Id. at 5-7.  Be that as it may, had the Class recovered $409,000 in statutory damages at trial, it would have also been entitled to an additional award of its attorneys' fees and costs.  See 15 U.S.C. § 1692k(a)(3); Fla. Stat. § 559.77(2).  In contrast, the Revised Agreement provides no additional payment of attorneys' fees and costs.  Rather, Class

paying the first $50,000.00 in settlement administration costs, which is sufficient to cover the entirety of the administration costs in this case. Thus, after payment of the reasonable attorneys' fees determined by the Court below, settlement relief under the Revised Agreement amounts to a full refund or waiver of their actual damages plus $802.43 per Class Member.[9]

Class Members will not need to submit a claim form or take any affirmative steps in order to receive the funds. However, any benefit checks not negotiated within 180 days of their issue will be void. <u>See</u> Revised Agreement ¶ 3.05(b). The parties have agreed that any residual sums from uncashed checks will be paid to a <u>cy pres</u> recipient, designated in the Settlement Agreement as Jacksonville Area Legal Aid (JALA). <u>See id.</u> ¶ 3.05(b).

---

Counsel's fees will be paid from the $500,000 fund. As such, when the Statutory Damage Fund is distributed, the Settlement Class will not receive more in statutory damages from this settlement than they potentially could have recovered at trial.

[9] In the Revised Agreement, the parties agreed that Class Counsel may seek Court approval of an award no greater than 27.5% of the Total Settlement Amount. <u>See</u> Revised Agreement ¶ 2.20(a). In the Final Approval Motion, Class Counsel reduced this request to 25% of the Total Settlement Amount, approximately $253,875.55. <u>See</u> Final Approval Motion at 10; <u>see also</u> Supplemental Declaration of Jordan A. Shaw, Esq. in Support of Plaintiff Natalie Kuhr's Unopposed Motion for Final Approval of Class Action Settlement and Incorporated Memorandum of Law & Unopposed Motion for Award of Attorneys' Fees and Costs (Doc. 48; Suppl. Shaw Decl.) ¶ 9, filed January 11, 2021. As discussed more fully below, the Court will approve a reasonable attorneys' fee award of $203,100.44, or 20% of the Total Settlement Amount. The remaining $296,899.56 in the "Statutory Damage Fund" will be divided among the 370 Class Members who did not opt-out, for a payment of $ 802.43 each.

### c. NON-MONETARY BENEFITS TO THE SETTLEMENT CLASS

As a non-monetary benefit of the Settlement, Defendants each represent and warrant that they have "established changes to [their] procedures and that [they] will no longer charge amounts in excess of the amount permitted under § 627.736(5)(a)(4), Fla. Stat. in the future." See Revised Settlement Agreement ¶ 3.15.

### d. THE RELEASE BY THE SETTLEMENT CLASS

Plaintiff and the 370 Class Members who did not opt-out, agree to release all claims against Defendants raised in the Complaint or claims related to Defendants' Balance Billing which could have been raised in the class action Complaint. See Revised Agreement ¶ 4.01 (providing that Class Members will release all past, present and future claims against Defendants that "arise out of and/or concern" the claims "that were asserted, or attempted to be asserted, or that could have been asserted" in this lawsuit).

### e. ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARD

The initial Settlement Agreement originally authorized Class Counsel to seek, without opposition from Defendants, 33.33% of the Total Settlement Amount as an award of attorneys' fees and costs.  Following the August Hearing, Class Counsel reduced the percentage in the Revised Agreement to 27.5%. See Revised Agreement ¶ 2.20(a).  In the Final Approval Motion, Class

Counsel have again reduced their request for attorneys' fees and costs to 25% of the Total Settlement Amount. See Final Approval Motion at 8 n.5. The Court will address a reasonable attorneys' fee award in its discussion of the Fee Motion below.

As noted above, although the Revised Agreement provides for an incentive award to the Representative Plaintiff, the Court rejected that portion of the Settlement in the Preliminary Approval Order in light of the Eleventh Circuit's recent Johnson decision holding that such awards are impermissible. See supra at 2 n.1 (citing Johnson, 975 F.3d at 1260-61); see also Preliminary Approval Order at 17-18, 26.

### III.   ADEQUACY OF CLASS NOTICE

Rule 23(e) requires a court to "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. See Rule 23(e)(1). With regard to Rule 23(b)(3) classes, the Rule states that

> the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. . . . The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Rule 23(c)(2)(B).  Thus, the Rule requires that "[i]ndividual notice must be sent to all class members whose names and addresses may be ascertained through reasonable effort."  <u>Eisen v. Carlisle & Jacquelin</u>, 417 U.S. 156, 173 (1974). Additionally, due process requires that the "notice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"  <u>See</u> <u>id.</u> at 174 (quoting <u>Mullane v. Central Hanover Bank & Trust Co.</u>, 339 U.S. 306, 314 (1950)).  "In every case, reasonableness is a function of anticipated results, costs, and amount involved."  <u>In re Nissan Motor Corp. Antitrust Litig.</u>, 552 F.2d 1088, 1099 (5th Cir. 1977).[10]  Reasonableness also depends on the information available to the parties.  <u>See</u> <u>id.</u> at 1098.

In accordance with the Preliminary Approval Order, the Settlement Administrator mailed the Court's Class Notice to each of the 371 potential Class Members on November 6, 2020, via the United States Postal Service (USPS). <u>See</u> Final Approval Motion, Ex. A: Declaration of Ryan Chumley Regarding Settlement Administration (Doc. 47-1; Chumley Decl.) ¶ 7.  Prior to mailing, the Settlement Administrator made reasonable efforts to obtain updated addresses for the potential Class Members identified on the Class List (Doc. 50).  <u>See</u>

---

[10] In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Chumley Decl. ¶ 6. Of the 371 notices mailed, only seven were returned as undeliverable. Id. ¶¶ 7-8. Of the seven, updated addresses for three were located, and the Settlement Administrator remailed notices to those Class Members. See id. ¶ 8.[11]

In addition, on November 6, 2020, the Settlement Administrator established a settlement website to which Class Members had access. See Chumley Decl. ¶ 9. The settlement website allowed Class Members to view and download the Class Notice, the Settlement Agreement, the Court's Preliminary Approval Order, and other Court documents. See id. The settlement website also included information on how to contact the Settlement Administrator to update a Class Member's mailing address or ask additional questions. Id. Because the parties complied with the agreed-to notice provisions as preliminarily approved by the Court, and given that there are no developments or changes in the facts to alter the Court's previous conclusion, the Court will

---

[11] At the Fairness Hearing, the parties agreed to an extended opt-out deadline for the three Class Members whose notices had to be re-sent. As such, on January 28, 2021, the Settlement Administrator mailed a second notice to those three individuals informing them that they had until February 10, 2021, to opt-out of the Settlement. See Joint Notice of Compliance and No Additional Opt-Outs (Doc 54; Joint Notice). On February 12, 2021, counsel filed the Joint Notice stating that none of the three late-notified Class Members have elected to opt-out of the Settlement. See Joint Notice at 1. As to the four Class Members for whom updated addresses could not be located, the parties agreed at the Fairness Hearing that Mayo would retain the funds to which those Class Members are entitled for a period of one-year in the event that those Class Members return to Mayo for treatment or are otherwise located. After one year, Mayo will pay any remaining unclaimed funds to the designated cy pres recipient.

finally conclude that the notice provided in this case meets the requirements of Rule 23(c)(2)(B).

## IV.   FINAL MOTION TO CERTIFY CLASS

The Court notes that there have been no objections to class certification and no change in circumstances to alter the Court's previous conclusions. Thus, the Court will finally certify the class for the reasons stated in the Preliminary Approval Order.  See Preliminary Approval Order at 8-16.

## V.   FAIRNESS AND ADEQUACY OF THE SETTLEMENT

### a. STANDARD OF REVIEW

It is well established that settlements are "highly favored in the law and will be upheld whenever possible because they are means of amicably resolving doubts and preventing lawsuits." Miller v. Rep. Nat'l. Life Ins. Co., 559 F.2d 426, 428 (5th Cir. 1977).  A district court, in reviewing a proposed settlement of a class action case must find that there has been no fraud or collusion between the parties in arriving at the proposed settlement and that the proposed settlement is "fair, adequate and reasonable." See id. at 428; see also Bennett v. Behring Corp., 737 F.2d 982, 986 (11th Cir. 1984); Rule 23(e)(2).  The Eleventh Circuit has previously outlined several factors that a court must consider in its determination of whether a proposed class-action settlement is fair, adequate, and reasonable:

(1)    the likelihood of success at trial;
(2)    the range of possible recovery;
(3)    the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable;
(4)    the complexity, expense and duration of the litigation;
(5)    the substance and amount of opposition to the settlement; and
(6)    the stage of the proceedings at which the settlement was achieved.

See Bennett, 737 F.2d at 986.  In weighing these factors, the Court may "rely upon the judgment of experienced counsel for the parties," and "absent fraud, collusion, or the like," is "hesitant to substitute its own judgment for that of counsel."  See Canupp v. Liberty Behavioral Health Corp., 417 F. App'x 843, 845 (11th Cir. 2011) (citing Cotton v. Hinton, 559 F.2d 1326, 1330 (5th Cir. 1977)).  In addition, effective December 1, 2018, Rule 23 itself was amended to add a mandatory but non-exhaustive set of similar final approval criteria:

(A) the class representatives and class counsel have adequately represented the class;
(B) the proposal was negotiated at arm's length;
(C) the relief provided for the class is adequate, taking into account:
    (i) the costs, risks, and delay of trial and appeal;
    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
    (iv) any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably relative to each other.

Rule 23(e)(2).  For the reasons discussed below, the application of these factors, as well as the analogous <u>Bennett</u> factors, leads the Court to conclude that the proposed settlement is fair, adequate, and reasonable under the circumstances of this case.

### b. ANALYSIS

#### i. ADEQUACY OF REPRESENTATION & ARM'S-LENGTH NEGOTIATIONS

Pursuant to Rule 23(e)(2)(A) and (B), when evaluating whether to approve a class settlement, the Court must consider whether "the class representative and class counsel have adequately represented the class," and whether "the proposal was negotiated at arm's length."  As previously addressed in the Preliminary Approval Order, the Court finds that the Class is represented by adequate counsel.  <u>See</u> Preliminary Approval Order at 12-13.  The Court's preliminary determination is further confirmed by Class Counsel's conduct since that time in effectuating notice to the Settlement Class, preparing the Final Approval Motion, and appearing at the Fairness Hearing.  As such, the Court remains satisfied that the Settlement Class is represented by adequate counsel.

Likewise, the Court finds that the settlement was achieved through arm's-length negotiations.  Indeed, although the parties reached the settlement without the involvement of a neutral mediator, a review of the record reveals

no evidence of fraud or collusion between the parties.  And while the parties settled early in the litigation of this case, they did so after engaging in discovery and exchanging confidential information.  Thus, Class Counsel had an adequate information base upon which to conduct negotiations.  See Rule 23(e)(2)(A), adv. comm. note (2018 amend.) ("For example, the nature and amount of discovery in this or other cases, or the actual outcomes of other cases, may indicate whether counsel negotiating on behalf of the class had an adequate information base.").  The Court is satisfied that the prompt settlement of this action is the result of good faith, arm's-length negotiations, based on an accurate assessment of the evidence by competent counsel.

### ii.  ADEQUACY OF THE RELIEF

Next, the Court must consider whether the relief provided for the Settlement Class is adequate, taking into account:

> (i) the costs, risks and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

Rule 23(e)(2)(C).  Notably, several of the Bennett factors also address the "costs, risks and delay of trial and appeal," by weighing the likelihood of success and range of possible recovery for the class at trial, measured against the trial's anticipated complexity, cost and duration.  Bennett, 737 F.2d at 986.

Nevertheless, "[i]t is not necessary to try the merits of the case in connection with reviewing the settlement."  Elkins v. Equitable Life Ins. Co. of Iowa, No. CivA96-296-Civ-T-17B, 1998 WL 133741, at *25 (M.D. Fla. Jan. 27, 1998) (citing In re Corrugated Container Antitrust Litig., 643 F.2d 195, 212 (5th Cir. April 3, 1981)).  "Thus, the Court can limit its inquiry to determining 'whether the possible rewards of continued litigation with its risks and costs are outweighed by the benefits of the settlement.'" Id. (quoting Ressler v. Jacobson, 822 F. Supp. 1551, 1553 (M.D. Fla. 1992)).

Although the Settlement Class appears to have a strong case of liability against Mayo and PSB, full recovery at trial was not assured.  Had the case proceeded to trial, PSB would likely have raised a bona fide error defense and asserted that it reasonably relied on Mayo's calculation of the amounts owed.  See Owen v. I.C. Sys., Inc., 629 F.3d 1263, 1276-77 (11th Cir. 2011).  Mayo may also have asserted a bona fide error defense.  See Fla. Stat. § 559.77(3).  Such a defense may have been persuasive to a jury given that Mayo maintains billing procedures and ordinarily maintains those policies, as evidenced by the relatively small class size.  However, both Defendants faced at least one substantial hurdle in relying on these defenses given Plaintiff's allegations that her insurer sent both Mayo and PSB correspondence informing them that "'100% of the reasonable amount' had already been paid."  See Complaint ¶¶ 35, 38.

In addition, to recover under the FCCPA, the Settlement Class would have had to prove that Defendants "had <u>actual knowledge</u> that 'the debt is not legitimate' or that 'the right [the creditor is seeking to enforce] does not exist.'" <u>See</u> <u>Prescott v. Seterus, Inc.</u>, 684 F. App'x 947, 949 (11th Cir. 2017) (alteration in original) (emphasis added) (quoting Fla. Stat. § 559.72(9)). Moreover, even had the Class prevailed at trial, Class Members faced the risk that a jury would award merely a nominal amount in statutory damages, or potentially nothing at all. <u>See, e.g.</u>, <u>Thornton v. Wolpoff & Abramson, L.L.P.</u>, 312 F. App'x 161, 163 (11th Cir. 2008) (considering an FDCPA case where the jury found in favor of the plaintiff but awarded one dollar in statutory damages); <u>Dauval v. Preferred Collection & Mgmt. Servs., Inc.</u>, Case No. 8:11-cv-2269-T-27TGW, Doc. 70 (M.D. Fla. filed Jan. 15, 2013) (verdict in favor of plaintiff in FDCPA action with a statutory damages award of zero dollars).

Here, the Settlement Class is recovering the entirety of their actual damages, as well as a substantial award in statutory damages. While it is possible a jury may have awarded the Settlement Class slightly more in statutory damages than they will receive pursuant to the Revised Agreement, such an outcome was not guaranteed and the Settlement Class would have received this relief, if at all, only after years of additional litigation.[12] Given the

---

[12] As explained above, each of the 370 Class Members who did not opt-out will receive a statutory damages award of about $800. The maximum award of statutory damages that the Class could have received at trial is $409,000. This amount, divided among the same 370

substantial payment Class Members will receive, in addition to reimbursement of their actual damages, the Court is satisfied that the award to the Settlement Class falls within the range of reasonable recovery.  Indeed, the mere possibility of receiving a marginally greater award of statutory damages at trial does not outweigh the benefits of the settlement.  Thus, the Court finds that the recovery agreed to here, although less than what the Class may have recovered at trial, is a fair and reasonable settlement considering the risks, costs and delay of proceeding to trial.

In addition, the Court finds that the parties have agreed to a highly effective method of distributing relief to the class.  Significantly, Mayo has already refunded or waived the medical fees at issue, providing all Class Members with full recovery of their actual damages without requiring any effort from the Class Members.  Likewise, every Class Member who has not opted out will receive a benefit check with their pro rata share of the Statutory Damage Fund.  The Revised Agreement does not require Class Members to submit a claim or take any action in order to receive their portion of the recovery.  Moreover, counsel in this case and the Settlement Administrator were able to locate addresses for all but four of the 371 potential Class Members.  As to those

---

Class Members, would have resulted in an award of about $1,100.  In the Court's view, an additional $300 would not be worth the risk of obtaining less or the delay inherent in proceeding to trial and completing any appeals.

four, Mayo has agreed to retain the funds to which they are entitled for a year in the event that these individuals are located.

The Court is also satisfied that the settlement provides adequate relief with respect to the "terms of any proposed award of attorney's fees, including timing of payment." <u>See</u> Rule 23(e)(2)(C)(iii).   The Court has previously expressed its concerns with the size of the percentage recovery requested by Class Counsel. <u>See</u> Preliminary Approval Order at 19-20.   Nevertheless, in the Revised Agreement, the parties agreed that the Court would determine the amount of a reasonable fee award and that the Revised Settlement would be effective regardless of the amount awarded. <u>See</u> Revised Agreement ¶ 2.25.   As such, and based on the Court's determination of a reasonable attorneys' fee award discussed below, this factor does not weigh against approval of the Settlement.

### iii.  EQUITABLE TREATMENT OF CLASS MEMBERS

The Court also finds that "the proposal treats class members equitably relative to each other." <u>See</u> Rule 23(e)(2)(D).   As explained above, each Class Member has received a refund or waiver of the specific amount of his or her actual damages, and an equal portion of the statutory damages.   Thus, the settlement properly accounts for differences among individual Class Members and treats Class Members equitably in the division of the settlement.   Likewise, the Court is satisfied that the release is not likely to disproportionately impact

any particular Class Members. <u>See</u> Rule 23(e)(2)(D), adv. comm. note (2018 amend.) ("Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief.").

### iv. SUBSTANCE AND AMOUNT OF OPPOSITION TO THE SETTLEMENT

"In determining whether a proposed settlement is fair, reasonable and adequate, the reaction of the class is an important factor." <u>Lipuma v. Am. Express Co.</u>, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005). A low percentage of objections demonstrates the reasonableness of a settlement. <u>Id.</u> Here, none of the 371 putative Class Members objected to the Settlement and only a single person elected to opt-out. The lack of any substantial opposition to the proposed Settlement indicates that it is fair, adequate, and reasonable.

Having considered all the requisite factors, the Court concludes that the proposed settlement is fair, adequate, reasonable and that its approval is in the best interest of the parties.

### VI.   ATTORNEYS' FEES AND COSTS

Rule 23(h) provides that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." A prevailing plaintiff under the FDCPA and FCCPA

may recover "the costs of the action, together with a reasonable attorney's fee as determined by the court." See 15 U.S.C. § 1692k(a)(3); Fla. Stat. § 559.77(2). Moreover, the Eleventh Circuit instructs that attorneys who create a common fund are entitled to be compensated for their efforts from a percentage of that fund. See Camden I Condo. Ass'n v. Dunkle, 946 F.2d 768, 774 (11th Cir. 1991). Here, the parties agreed that Class Counsel could seek an award of attorneys' fees and costs not to exceed 27.5% of, and paid from, the Total Settlement Amount. See Revised Agreement ¶ 2.20. Although Defendants agreed not to object to a request within those parameters, the Revised Agreement specifies that "the Court (and only the Court) shall determine the amount, if any, of the Attorney Fee/Litigation Cost Award in this Action." Id. Indeed, the Court has an independent responsibility to "assess the reasonableness of attorneys' fees proposed under a settlement of a class action . . . ." See Piambino v. Bailey, 610 F.2d 1306, 1328 (5th Cir. 1980). This duty applies regardless of whether the fees are paid from a common fund settlement or otherwise. See Rule 23(h), adv. comm. note (2003 amend.); see also Strong v. BellSouth Telecomms., Inc., 137 F.3d 844, 849-50 (5th Cir. 1998).

Notably, the Class Members were informed of this proposed payment and none have objected. Nonetheless, even in the absence of objections, the Court bears the responsibility to ensure that "the amount and mode of payment of

attorney fees are fair and proper . . . ."  See Rule 23(h), adv. comm. note (2003 amend.); see also In re High Sulfur Content Gasoline Prods. Liability Litig., 517 F.3d 220, 227-28 (5th Cir. 2008) ("The court's review also 'guards against the public perception that attorneys exploit the class action device to obtain large fees at the expense of the class.'" (quoting Strong, 137 F.3d at 849)); see also Foster v. Boise-Cascade, Inc., 420 F. Supp. 674, 680 (S.D. Tex. 1976) (explaining that the court has the "obligation in any Rule 23 class action to protect [the class action device] from misuse," specifically, "[t]he most commonly feared abuse is the possibility that Rule 23 encourages strike suits promoted by attorneys who simply are seeking fat fees") (internal quotations and citations omitted), aff'd 577 F.2d 335 (5th Cir. 1978).  As stated in Levin v. Miss. River Corp., 377 F. Supp. 926, 931 (S.D.N.Y. 1974):

> to accept as conclusive the parties' agreement as to fees in a class or derivative action would mean the surrender of the court's duty and its discretion.  The agreement, while it may have some relevance, does not relieve the court of its duty to make an independent appraisal, to avoid awarding windfall fees and . . . likewise avoid every appearance of having done so, and to award only such fees that are fair, with an eye to moderation based upon applicable standards.

Id. at 931 (internal quotations omitted).  The Court does not suggest that any type of misuse or exploitation occurred in this action, nevertheless, the Court must fulfill its independent obligation to review the attorneys' fees requested.

### a. STANDARD OF REVIEW[13]

In <u>Camden</u>, the Eleventh Circuit recognized that the "majority of common fund fee awards fall between 20% and 30% of the fund."  <u>Camden</u>, 946 F.2d at 774.  The court noted that: "district courts are beginning to view the median of this 20% to 30% range, i.e., 25% as a 'bench mark' percentage fee award which may be adjusted in accordance with the individual circumstances of each case."  <u>Id.</u> at 775.  Nevertheless, the court instructed district courts to "articulate specific reasons for selecting the percentage upon which the attorneys' fee award is based.  The district court's reasoning should identify all factors upon which it relied and explain how each factor affected its selection of the percentage of the fund awarded as fees."  <u>Id.</u>; <u>see also</u> <u>Johnson</u>, 975 F.3d at 1261.

The <u>Camden</u> court enumerated the following factors for a district court to consider in determining the appropriate percentage of the fund to award as

---

[13] Despite the existence of a statutory fee-shifting provision, the Revised Agreement provides for the payment of attorneys' fees out of a common fund, such that the common fund doctrine applies to the analysis here.  Indeed, in <u>Muransky v. Godiva Chocolatier, Inc.</u>, 922 F.3d 1175, 1195 (11th Cir. 2019) a panel of the Eleventh Circuit Court of Appeals found that "[t]he common-fund doctrine applies to class settlements that result in a common fund even when class counsel could have pursued attorney's fees under a fee-shifting statute."  <u>See</u> <u>Muransky</u>, 922 F.3d at 1195 (citing <u>Staton v. Boeing Co.</u>, 327 F.3d 938, 968–69 (9th Cir. 2003); <u>Florin v. Nationsbank of Ga.</u>, 34 F.3d 560, 563 (7th Cir. 1994)); <u>see also</u> <u>McLendon v. Cont'l Grp., Inc.</u>, 872 F. Supp. 142, 151-52 (D.N.J. 1994).  The Court acknowledges that this decision was later vacated, 939 F.3d 1278 (11th Cir. 2019), and the matter was reheard en banc, 979 F.3d 917 (11th Cir. 2020).  The en banc court found that the representative plaintiff in <u>Muransky</u> lacked standing to pursue the class claims and therefore, did not evaluate the fairness of the settlement.  <u>See</u> <u>Muransky</u>, 979 F.3d at 921.  Because the en banc court did not reach the attorneys' fees issue, the Court finds the vacated panel decision on this point, and the cases to which it cites, to be persuasive, albeit not binding authority.

attorneys' fees: (i) the time and labor required; (ii) the novelty and difficulty of the questions involved; (iii) the skill requisite to perform the legal services properly; (iv) the preclusion of other employment by the attorney due to acceptance of the case; (v) the customary fee; (vi) whether the fee is fixed or contingent; (vii) time limitations imposed by the client or the circumstances; (viii) the amount involved and the results obtained; (ix) the experience, reputation, and ability of the attorneys; (x) the "undesirability" of the case; (xi) the nature and length of the professional relationship with the client; and (xii) awards in similar cases. <u>Camden</u>, 946 F.2d at 773 n.3.  In addition to the above factors, the <u>Camden</u> court also listed the following pertinent considerations: "the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action."  <u>Id.</u> at 775.  While each of the above factors may be an appropriate consideration, "[t]he factors which will impact upon the appropriate percentage to be awarded as a fee in any particular case will undoubtedly vary." <u>Id.</u>

Here, Class Counsel have twice reduced their requested fees and now seek an attorneys' fee award of 25% of the Total Settlement Amount, or $253,875.55.   <u>See</u> Final Approval Motion at 10; <u>see also</u> Supplemental

Declaration of Jordan A. Shaw, Esq. in Support of Plaintiff Natalie Kuhr's Unopposed Motion for Final Approval of Class Action Settlement and Incorporated Memorandum of Law & Unopposed Motion for Award of Attorneys' Fees and Costs (Doc. 48; Suppl. Shaw Decl.) ¶ 9. Based on the Court's review of the entire record in this action and in consideration of the <u>Camden</u> factors and the arguments of Class Counsel, the Court finds that a reasonable fee award in this case is 20% of the Total Settlement Amount, specifically, $203,100.44.

### b. ANALYSIS

#### i. TIME, LABOR & SKILL REQUIRED

Plaintiff initiated this class action lawsuit on January 9, 2019. <u>See</u> Complaint (Doc. 3). Defendants removed the matter to this Court on April 22, 2019, and approximately eleven months later the matter settled, just prior to attending Court-ordered mediation. <u>See</u> Joint Notice of Proposed Class Settlement (Doc. 28; Notice of Settlement), filed March 18, 2020. As described in the Fee Motion and reflected in the billing records, Class Counsel devoted an appreciable amount of time engaging in discovery and reviewing the relevant data as necessary to ascertain whether Mayo was engaged in balance billing, the amounts involved, and number of individuals impacted. Moreover, the Court acknowledges that given the complexities of medical billing and Florida's

PIP insurance laws, pursuing this case required a certain degree of skill and experience.

Nevertheless, other than the time required to analyze the data, this case moved quickly to settlement. The parties did not engage in any significant motion practice prior to settlement.  Indeed, the one disputed motion was the result of Class Counsel's failure to seek class certification within the time limits set by the version of this Court's Local Rules in effect at the time.  See Order (Doc. 26), entered January 14, 2020.  Once the Court ruled that Plaintiff could pursue class certification despite the missed deadline, the matter proceeded promptly to settlement.  Thus, in light of the short amount of time Class Counsel spent actively litigating this case, the Court views 20% of the Total Settlement Amount as reasonable compensation for the time and labor expended.

In analyzing this factor, the Court has also engaged in a lodestar "cross check" analysis.  See Waters v. Int'l Precious Metals Corp., 190 F.3d 1291, 1298 (11th Cir. 1999) ("[W]hile we have decided in this circuit that a lodestar calculation is not proper in common fund cases, we may refer to that figure for comparison."); see also In re Home Depot Inc., 931 F.3d at 1091 ("Courts often use a cross-check to ensure that the fee produced by the chosen method is in the ballpark of an appropriate fee."); Brian T. Fitzpatrick, An Empirical Study of

Class Action Settlement and Their Fee Awards, 7 J. of Empirical Legal Stud. 811, 833 (2010) (Fitzpatrick Article) (observing that in 49% of the 444 settlements studied "district courts said they considered the lodestar calculation as a factor in assessing the reasonableness of the fee percentages awarded").   In the Supplemental Shaw Declaration, Class Counsel submit billing records indicating that his firm has expended 286 hours on this matter for a total of $107,738.50 in fees, and incurred an additional $3,104.73 in costs. See Fee Motion at 9, Suppl. Shaw Decl. ¶ 7, Exs. A-B.   Accepting the $107,738.50 "lodestar" at face value, the fee sought by Class Counsel – 25% of the Total Settlement Amount- would result in a multiplier of approximately 2.356.   In contrast, awarding a fee based on a percentage at the bottom of the "bench mark" range—20% of the common fund—would result in a multiplier of 1.885.[14]   Notably, the Fitzpatrick Article, on which Class Counsel rely in the Fee Motion, finds that where courts have used the lodestar as a cross check on the reasonableness of the fee percentages awarded, the lodestar multiplier "ranged from 0.07 to 10.3 with a mean of 1.65 and a median of 1.34."   See

---

[14] The Court notes that were it to conduct a full lodestar analysis, it would be necessary to reduce the hours claimed as the billing records provided appear to inadvertently include some entries that relate to other cases.  See Suppl. Shaw Decl., Exs. A-B.  The Court has not done so, nor has the Court conducted any assessment of the reasonableness of Class Counsel's hourly rates.   Engaging in such an exercise would only demonstrate that the multiplier resulting from a 20% award is actually higher than 1.885.  Because the Court is convinced that 20% of the Total Settlement Amount is a fair and reasonable award in this action, and does not find it appropriate under the circumstances to reduce Class Counsel's award below the benchmark range applicable in common fund cases, the Court finds it unnecessary to engage in any further lodestar analysis.

Fitzpatrick, supra, at 833-34 (emphasis added).  The Court finds the 1.885 multiplier, which is only slightly above the average, to be more appropriate under the circumstances of this case.  Notably, this award is still nearly twice the amount actually billed, such that although it is less than what Class Counsel requests, it in no way penalizes Counsel for expeditiously reaching a settlement in this case.

### ii.  THE NOVELTY AND DIFFICULTY OF THE QUESTIONS INVOLVED

While class action lawsuits are generally complex, this one does not appear to have been particularly so.  While a certain degree of skill and knowledge regarding medical billing and Florida's PIP insurance laws was necessary to properly decipher the billing records, the FDCPA and FCCPA claims otherwise arose out of the relatively straightforward fact that Mayo was billing, and PSB was attempting to collect, more than was permitted under Florida law.  Indeed, at the August Hearing, counsel for Mayo explained that Mayo immediately reimbursed or waived the improperly billed amounts to nearly all potential Class Members at the outset of this litigation.  Thus, it appears that whether Mayo had engaged in improper billing was not in dispute.  Rather, had this case proceeded to trial, the questions presented would likely have centered on whether Defendants had actual knowledge of the improper practice and whether Defendants could rely on the bona fide error defense.

Nevertheless, neither Defendant appears to have mounted a vigorous defense on either of those issues prior to settlement. The matter settled early in the discovery period, and Class Counsel's billing records indicate that no depositions were taken prior to settlement. Thus, the Court finds that an award of 20% of the Total Settlement Amount adequately represents the relative difficulty of this case.

### iii. THE EXPERIENCE, REPUTATION, AND ABILITY OF THE ATTORNEYS

Federal class action litigation requires counsel that are skilled in both the procedural issues surrounding Rule 23 and the federal rules in general, as well as the substantive matters of the legal claims at issue. Although lead Class Counsel has been practicing law for less than ten years, he has "litigated hundreds of consumer matters," including some "complex commercial litigation cases." See Declaration of Jordan A. Shaw, Esq., etc. (Doc. 43; Shaw Decl.) ¶¶ 5-6. He has also served as class counsel in several state and federal class actions. See id. ¶ 7. While the Court finds that Class Counsel have competently and adequately represented the Class in this relatively straightforward lawsuit, based on a review of the record in this case, the Court is satisfied that 20% of the Total Settlement Amount is reasonable compensation under this factor as well.

### iv. PRECLUSION OF OTHER EMPLOYMENT BY THE ATTORNEY DUE TO ACCEPTANCE OF THE CASE

Class Counsel are members of a boutique law firm, presently consisting of eight attorneys, three of whom worked on this case. See Fee Motion at 9. The instant action demanded an appreciable amount of time over the past two years. As such, Class Counsel represent that the time spent litigating this action "inevitably took time away from other matters." Id. Of course, any time an attorney works on one case, he "inevitably" is not working on another case at the same time. Class Counsel do not indicate that this matter was so time consuming that they or their firm was forced to forego accepting other clients or cases. Indeed, while this case does appear to have required substantial review of medical billing records, it nevertheless involves a relatively small class, the members of which were readily ascertainable from Mayo's records, and counsel achieved settlement early in the discovery period. Thus, consideration of this factor supports a conclusion that an award of 20% of the fund is reasonable here.

### v. THE CUSTOMARY FEE AND THE AWARDS IN SIMILAR CASES

In the Fee Motion, Class Counsel assert that "fee awards ranging from 30% to 35% of the recovery constitute the most common category," and that "in the vast majority of cases, fee awards equaled or exceeded 25%." See Fee Motion at 9. In support, Class Counsel cite to an article by Brian T. Fitzpatrick in the

Journal of Empirical Legal Studies, published in 2010.  Notably, the author of this article reviewed 444 class action settlements where the district court used an ascertainable percentage method to award fees and found that the "average award was 25.4 percent and the median was 25 percent."  See Fitzpatrick, supra, at 833.  The author concludes the article with his assessment that: "District courts typically awarded fees using the highly discretionary percentage-of-the-settlement method, and fee awards varied over a wide range under this method, with a mean and median around 25 percent."  See id. at 845 (emphasis added).  In debt collection cases such as this, the average percentage of the settlement awarded in fees was 24.2%.  Id. at 835, Table 8.  Thus, the Court finds that the 20-30% benchmark range, first identified in Camden and reiterated in more recent Eleventh Circuit cases, remains an accurate assessment of the "customary fee" in common fund cases.  See Camden, 946 F.2d at 774; see, e.g., In re Home Depot Inc., 931 F.3d 1065, 1076 (11th Cir. 2019) ("In this Circuit, courts typically award between 20–30%, known as the benchmark range."); Faught v. Am. Home Shield Corp., 668 F.3d 1233, 1242 (11th Cir. 2011) ("And this court has often stated that the majority of fees in these cases are reasonable where they fall between 20–25% of the claims.").

Regarding the awards in similar cases, Class Counsel cite to a number of purportedly "similar cases" where courts approved fee awards in excess of 30% of the total settlement.  See Fee Motion at 16.  However, the Court has reviewed

the cases cited and does not find them to be particularly similar to this one. Indeed, only one of them involved a class settlement under the FDCPA, see Esposito v. I.Q. Data Int'l, Inc., No. 2:18-cv-437-JES-NPM, Doc. 53 (M.D. Fla. Oct. 30, 2019) (Order Granting Final Approval of Class Action Settlement and Final Judgment), and although the Esposito court awarded 33.3% of the settlement fund, this totaled only $115,500.00, far less than what is sought here.[15]   Notably, in this Court's prior experience with class action settlements under the FDCPA, the attorneys' fee award was separate from the recovery for the class members, given the fee-shifting provisions of the statute, and reviewed under the lodestar method.   See Grant v. Ocwen Loan Serv., LLC, No. 3:15-cv-1376-J-34PDB, Doc. 108 at 12-13, 18-19 (M.D. Fla. Jan. 30, 2019) (Final Order and Judgment) (approving a settlement where defendant agreed to pay the maximum amount of statutory damages available under the statute to the class and an additional $150,000 in attorneys' fees and costs, which was less than the amount billed); Prindle v. Carrington Mortg. Servs., LLC, No. 3:13-cv-1349-J-34PDB, Doc. 165 at 23-27 (M.D. Fla. Dec. 1, 2017) (Final Judgment and Order

---

[15] The settlement in Esposito involved a $350,000 common fund and the return of all improperly collected funds to any affected individuals, the amount of which is not disclosed. See Esposito, Doc. 53 at 2-3, 11.  Rather than seek a percentage of both the lump sum payment and the reimbursed funds, as Class Counsel request here, counsel in Esposito requested, and the Court awarded, fees based only on 33% of the lump sum $350,000 fund. Id. at 3.  While the Court does not mean to suggest that it is improper for Class Counsel to base their fee request here on the Total Settlement Amount, it is nevertheless a meaningful distinction between the fee request in this case and that approved in Esposito.

Approving Class Action Settlement) (approving $300,000 in attorneys' fees, less than the amount reflected in billing records, where settlement achieved after nearly three years of contested litigation, including summary judgment motion practice and class certification).

Based on this Court's experience in prior cases, and the foregoing analysis of customary awards, a fee award totaling 20% of the Total Settlement Amount, or $203,100.44, appears to be reasonable in this case.  Such an award is within the benchmark range of percentage fee awards recognized in the Eleventh Circuit, and results in a lodestar multiplier only slightly above average.

### vi. WHETHER THE FEE IS FIXED OR CONTINGENT

While not determinative, "[a] contingency fee arrangement often justifies an increase in the award of attorneys' fees." In re Sunbeam Sec. Litig., 176 F. Supp. 2d 1323, 1335 (S.D. Fla. 2001) (quoting Behrens v. Wometco Enters., Inc., 118 F.R.D. 534, 548 (S.D. Fla. 1988), aff'd 899 F.2d 21 (11th Cir. 1990)). In Behrens, the court explained that:

> [a] contingency fee arrangement often justifies an increase in the award of attorneys' fees. This rule helps assure that the contingency fee arrangement endures. If this "bonus" methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.

Behrens, 118 F.R.D. at 548. Because this case was prosecuted by Class Counsel on a purely contingent basis, this factor weighs in favor of a substantial fee

award. However, while Class Counsel did assume a risk in taking this case, as noted above, the case proceeded fairly quickly to a settlement. Much of the time spent on this case was devoted to finalizing the settlement, where the risk to Class Counsel of not receiving compensation for his time was much smaller. Accordingly, while this factor weighs in favor of substantial award, it does not support the award requested by Class Counsel. Rather, the Court finds that 20% of the fund, and nearly twice the amount billed, substantially and reasonably compensates Class Counsel for the risk they took in accepting this case.

### vii. TIME LIMITATIONS IMPOSED BY THE CLIENT OR THE CIRCUMSTANCES

While this case may have required Class Counsel's immediate priority at the outset in light of the client's circumstances and the applicable statutes of limitations, Counsel has not indicated that the circumstances were so urgent that it delayed attention to other legal work. See Fee Motion at 12-13. Indeed, following the filing of the Complaint, this case did not proceed at a particularly rapid pace and Counsel requested and received multiple extensions of time. Thus, this factor supports a percentage award at the low end of the benchmark range.

### viii. THE AMOUNT INVOLVED AND THE RESULTS OBTAINED, INCLUDING NON-MONETARY BENEFITS

"The result achieved is a major factor to consider in making a fee award." Pinto v. Princess Cruise Lines, Ltd., 513 F. Supp. 2d 1334, 1342 (S.D. Fla. 2007) (citing Hensley v. Eckerhart, 461 U.S. 424, 436 (1983)).  Here, Class Counsel achieved a very advantageous result for the Settlement Class.  As a result of this lawsuit, Mayo promptly identified the affected patients and waived or reimbursed the amounts billed in excess of what is authorized under Florida law.  These waived or reimbursed medical fees total $515,502.20 in actual damages to the 371 potential class members.  Defendants also agreed to pay an additional $500,000, as well as the cost of administration up to $50,000.  This is certainly a favorable result for the Class Members, albeit not quite to the extent Class Counsel describe in their Motions.  While Class Counsel repeatedly tout their success in achieving a settlement in excess of the amount of statutory damages recoverable at trial, see Final Approval Motion at 7, 17; Fee Motion at 2-3, characterizing the settlement in this way also means that Class Counsel agreed to forego any additional recovery in attorneys' fees and costs, as the Class would have been statutorily entitled to had they prevailed at trial.  See Preliminary Approval Order at 18-20.  Although not unreasonable, this was nevertheless a significant concession from Class Counsel on behalf of the Settlement Class which factors into the Court's determination of what

percentage of the Total Settlement Amount should be allocated to fees.  A lump sum payment of $500,000, representing both statutory damages and fees, is still a substantial award for the Class, but it less than the <u>full</u> recovery that Class Counsel attempt to portray it as.  Under the circumstances of this case, the Court finds that the monetary recovery for the Class warrants supports an award of 20% of the Total Settlement Amount, which is a substantial award of fees for Class Counsel but does not overcompensate them, to the detriment of the Settlement Class, for the results achieved in this action.

The Revised Agreement also provides for a non-monetary benefit as follows: "Mayo and PSB each represent and warrant that it has established changes to its procedures, and that it will no longer charge amounts in excess of the amount permitted under § 627.736(5)(a)(4), Fla. Stat. in the future."  <u>See</u> Revised Agreement ¶ 3.15.  Thus, the non-monetary relief that Class Counsel achieved for the Class is a representation from Defendants that they will comply with Florida law.  The significance of this promise to obey the law is adequately captured by a 20% fee award as well.

### ix.  The "Undesirability" of the Case

This factor serves to reward counsel for taking on a case that others were inclined to refuse.  "Such aversion could be due to any number of things, including social opprobrium surrounding the parties, thorny factual circumstances, or the possible financial outcome of the case."  <u>Sunbeam</u>, 176 F.

Supp. 2d at 1336.  Class Counsel argue that this case, although desirable to them, may have been undesirable to other attorneys because the outcome was uncertain, the class was small, and damages were limited.  <u>See</u> Fee Motion at 15-16.  Based on this Court's experience with FDCPA and FCCPA class action lawsuits, the Court does not view this case as being particularly undesirable.  Although the class size was small, the overbilling resulted in significant actual damages, which are not always present in such cases.  Moreover, these statutes provide for a recovery of statutory damages as well as attorneys' fees and costs, thus providing a significant monetary incentive to pursue such cases.  And notably, at least one of the Defendants to this case has substantial resources such that the ability to collect on any judgment was not in doubt.  The Court is satisfied that 20% of the Total Settlement Award adequately captures the undesirability of this case.

### x.  THE NATURE AND LENGTH OF THE PROFESSIONAL RELATIONSHIP WITH THE CLIENT

Class Counsel did not previously represent the named plaintiff in any capacity. Thus, this factor does not support any adjustment to the benchmark.

### xi.  THE REACTION OF THE CLASS

As noted previously, despite adequate notice, no Class Members filed any objections to the Revised Agreement or the attorneys' fees request, nor did any Class Members attend the Fairness Hearing. "The fact that there are no

objections to either the Settlement or to [Class Counsel's] request for attorney's fees is strong evidence of the propriety and acceptability of that request." Ressler v. Jacobson, 149 F.R.D. 651, 656 (M.D. Fla. 1992); see also Elkins, 1998 WL 133741, at *36 ("The lack of objections is itself important evidence that the requested fees are fair."). However, while this factor weighs in favor of approving the requested award, as the Court explained above regardless of whether there are any objections, the Court has an independent obligation to ensure that the fees awarded are fair and proper. See Rule 23(h), adv. comm. note (2003 amend.).

In light of the foregoing, the Court will award a fee in the amount of 20% of the Total Settlement Amount, totaling $203,100.44. Based on the Court's review of the Camden factors, and taking into consideration the lodestar cross-check, the Court finds that the 25% fee requested is excessive under the circumstances. Rather, after review of the record in this case and careful consideration of the settlement achieved, the Court finds that a percentage at the low end of the benchmark range, which still amounts to nearly double the lodestar amount, is appropriate in this action.

## VII. CONCLUSION

Upon consideration of the Final Approval Motion, the arguments presented at the Fairness Hearing, as well as all matters of record, the Court finds that the Revised Agreement is fair, reasonable, and adequate to warrant

final approval.  Thus, the Court determines that it is appropriate to grant the

Motion for Final Approval.[16]  In addition, the Court will grant the Fee Motion,

in part, to the extent set forth above.  Accordingly, it is **ORDERED:**

1.      Plaintiff's Unopposed Motion for Final Approval of Class Action

Settlement and Incorporated Memorandum of Law (Doc. 47) is **GRANTED**.

The Court finally approves the terms of the Revised Agreement as a fair,

reasonable, and adequate resolution of the dispute between the parties.

2.      The Court, having found that Plaintiff has met the prerequisites to

class certification set forth in Rule 23, Federal Rules of Civil Procedure, finally

certifies, for purposes of settlement only, the Settlement Class.  The Settlement

Class is made up of the Mayo Class and the FDCPA Subclass, defined as follows:

> A.     The Mayo Class:
>
> [A]ll Florida residents who according to readily accessible
> data and other electronic records of Mayo, at any time during
> the period of January 9, 2017 through May 28, 2020, were
> charged by Defendant Mayo medical-related fees related to
> motor vehicle accidents in excess of the amount allowed
> under Florida law.
>
> B.     The FDCPA Subclass:
>
> [A]ll Florida Residents who according to readily accessible
> data and other electronic records of Mayo and PSB, at any
> time during the period of January 9, 2018 through May 28,
> 2020, were charged by Defendant PSB acting on Mayo's

---

[16] The Court notes that Defendants have complied with the notice requirements of the Class
Action Fairness Act (CAFA), 28 U.S.C. § 1715.  See Defendants' Notice of Compliance with
Notice of Proposed Settlement Obligations Under the Class Action Fairness Act (Doc. 53)
(establishing that Defendants sent the requisite notices on June 12, 2020).

behalf medical-related fees related to motor vehicle accidents in excess of the amount allowed under Florida law.

3.    The following individuals are **excluded** from the Settlement Class:

a) any Judge or Magistrate presiding over this action and members of their families; b) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest and its current or former employees, officers and directors; c) persons who properly execute and file a timely request for exclusion from the Classes; d) the legal representatives, successors, or assigns of any such excluded persons; e) Plaintiff's counsel and Defendants' counsel.

4.    The Court finds that the form, content and method of dissemination of the notice provided to the Settlement Class were adequate and reasonable, and constituted the best notice practicable under the circumstances.  The Court's Revised Notice provided sufficient notice of the proposed settlement, the terms and conditions set forth in the Revised Agreement, and these proceedings to the Settlement Class, and fully satisfied the requirements of Rule 23 and due process.

5.    The members of the Settlement Class are identified on the List of Class Members filed under seal in the Court record at Document 50, on January 12, 2021.  However, the Court **excludes** from the Settlement Class one individual, Susan Willoughby of Neptune Beach, Florida, who submitted a timely and valid request for exclusion from the Settlement Class.  This individual shall neither share in the distribution of the Statutory Damage

Fund, nor receive any benefits of the terms of the Revised Agreement, and she is not bound by the terms of the release or this Final Judgment.

6.     Plaintiff's Unopposed Motion for Award of Attorneys' Fees and Costs and for Named Plaintiff's Service Award (Doc. 42) is **GRANTED**, **in part** to the extent set forth herein, and otherwise **DENIED**.  The Court awards Class Counsel 20% of the Total Settlement Amount, or $203,100.44, as attorneys' fees and costs and directs the distribution of $203,100.44, to Class Counsel in accordance with the terms of the Revised Agreement.

7.     The parties are directed to implement and consummate the Revised Agreement in accordance with its terms and provisions and this Final Order and Judgment.

8.     The Court approves the distribution of the Statutory Damage Fund, as described in the Revised Agreement, as fair, reasonable, and adequate, and the Settlement Administrator is authorized to distribute the Statutory Damage Fund in accordance with the terms of the Revised Settlement Agreement and this Final Order and Judgment.

9.     Proceeds from any Benefit Checks that are not negotiated within the time frames set forth in ¶ 3.05(b) of the Revised Agreement shall be paid to the cy pres recipient in accordance with the Revised Agreement.  In addition, for a period of one year from the date of this Final Order and Judgment, Mayo shall retain the funds to which the four Class Members for whom valid

addresses have not been found are entitled in the event these individuals can be located.  If such funds cannot be disbursed to those Class Members within the one-year time frame, Mayo shall pay the funds to the <u>cy pres</u> recipient designated in the Revised Agreement.

10.     The Releases, which are set forth in Section IV of the Revised Agreement, are expressly incorporated herein in all respects and are effective as of the date of this Final Order and Judgment; and the Released Persons (as that term is defined in the Revised Agreement) are forever released, relinquished, and discharged by the Releasing Persons (as that term is defined in the Revised Agreement) from all Released Claims (as that term is defined in the Revised Agreement).

11.     Promptly after the Final Settlement Date, Class Members shall dismiss with prejudice all claims, actions, or proceedings that have been brought by any Class Member and that have been released pursuant to the Revised Agreement and this Final Order and Judgment.

12.     Neither the Revised Agreement, nor any of its terms and provisions, nor any of the negotiations or proceedings connected with it, nor any of the documents or statements referred to therein, nor this Final Order and Judgment, nor any of its terms and provisions, shall be:

(a)     offered by any person or received against Defendants as evidence or construed as or deemed to be evidence of any presumption,

concession, or admission by Defendants of the truth of the facts alleged by any person, the validity of any claim that has been or could have been asserted in the action or in any other litigation or judicial or administrative proceeding, the deficiency of any defense that has been or could have been asserted in the action or in any litigation, or of any liability, negligence, fault, or wrongdoing by Defendants;

(b)   offered by any person or received against Defendants as evidence of a presumption, concession, or admission of any fault, misrepresentation, or omission with respect to any statement or written document approved or made by Defendants; or

(c)   offered by any person or received against Defendants as evidence of a presumption, concession, or admission with respect to any liability, negligence, fault, or wrongdoing in any civil, criminal, or administrative action or proceeding.

13.    In the event that the Final Approval Date, as defined in the Revised Agreement, does not occur, this Final Order and Judgment shall automatically be rendered null and void and shall be vacated and, in such event, all orders entered and releases delivered in connection herewith shall be null and void.  In the event that the Final Approval Date does not occur, the Revised Agreement shall become null and void and be of no further force and effect, neither the Revised Agreement nor the Court's Orders, including this Order,

shall be used or referred to for any purpose whatsoever, and the parties shall retain, without prejudice, any and all objections, arguments, and defenses with respect to class certification, including the right to argue that no class should be certified for any purpose, and with respect to any claims or allegations in this litigation.

14.     The Court has issued all necessary orders under Rule 23 approving of the settlement in a manner substantially consistent with the terms and intent of the Revised Agreement.

15.     The Court has personal jurisdiction over the parties and the Class Members; venue is proper in this Court and this Court has subject matter jurisdiction to approve the Revised Agreement, including all Exhibits thereto, and to enter this Final Order and Judgment. Without in any way affecting the finality of this Final Order and Judgment, this Court retains jurisdiction as to all matters relating to administration, consummation, enforcement, and interpretation of the Revised Agreement and of this Final Order and Judgment, and for any other necessary purpose.

16.     The Court enters this judgment finally approving the settlement of the action in a manner substantially consistent with the terms and intent of the Revised Agreement and dismissing the Action with prejudice.

17.     No Party with a right to do so has terminated the Revised Agreement.

18.     This Action, including all individual claims and class claims presented herein, is **DISMISSED**, without fees or costs to any party except as otherwise provided herein.

19.     The Clerk of the Court is directed to terminate all pending motions as moot and close the file.

**DONE AND ORDERED** in Jacksonville, Florida, this 30th day of March, 2021.

MARCIA MORALES HOWARD
United States District Judge

Copies to:

Counsel of Record
Jacksonville Area Legal Aid